

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE    SEP 05 2013

*Madsen C.J.*
CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on Sep 5, 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 87350-0 |
| Respondent, | ) | |
| v. | ) | En Banc |
| LOUIS CHAO CHEN, | ) | |
| Petitioner. | ) | Filed    SEP 05 2013 |

C. JOHNSON, J.—The central issue in this case is the apparent conflict between a statutory requirement that arguably limits disclosure of competency evaluations prepared pursuant to chapter 10.77 RCW and our state constitutional requirement that "[j]ustice in all cases shall be administered openly." WASH. CONST. art. I, § 10. Once the competency evaluation was filed with the court, the trial court relied on it to determine the defendant's competency to stand trial and, applying *Ishikawa*,[1] denied the defendant's motion to seal the entire evaluation. We accepted direct discretionary review of that decision. For the reasons that

---

[1] *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 37-39, 640 P.2d 716 (1982).

follow, we affirm the trial court and hold that once a competency evaluation becomes a court record, it also becomes subject to the constitutional presumption of openness, which can be rebutted only when the court makes an individualized finding that the *Ishikawa* factors weigh in favor of sealing.

FACTS AND PROCEDURAL HISTORY

Louis Chen stands accused of two counts of aggravated murder in the first degree for two murders that occurred in August 2011. After the State filed formal charges, the defense presented mitigation materials in an effort to discourage the State from seeking the death penalty.[2] These materials contained an opinion from a psychiatrist that Chen was not competent to stand trial. In response, the State requested, and the trial court issued, an order requiring Chen to have his competency evaluated at Western State Hospital (WSH). The defense did not contest that Chen should be required to obtain a second evaluation but preferred not to have him transferred to WSH.[3]

Several weeks later, the parties returned to court. Chen had not yet been transported to WSH, and the defense presented the court with an updated

---

[2] The death penalty has not been sought in this case.

[3] At the time of the hearing, where there was reason to doubt a defendant's competency, two competency evaluators were required, one of which the State was entitled to approve. Former RCW 10.77.060 (2004). The statute was subsequently amended to remove the requirement for two evaluators. LAWS OF 2012, ch. 256, § 3.

2

psychiatric opinion that Chen was now competent to stand trial. Based on this opinion, the defense asked the court to vacate its order requiring another competency evaluation. The court denied that motion but vacated the part of the order requiring Chen to be transferred to WSH.

Doctors for WSH conducted the competency evaluation in December 2011. In January 2012, the court reviewed the evaluation and found Chen competent to stand trial. The defense had also moved to seal the competency evaluation or redact certain information, relying largely on RCW 10.77.210, which arguably limits disclosure of such competency evaluations. During another hearing in March 2012, the court informed the parties that it had prepared an order on the motion to seal. The court applied the *Ishikawa* factors and declined to seal the entire evaluation but did redact certain information. A television station was also in the courtroom and offered a blanket objection to the motion to seal.[4]

The commissioner granted Chen's request for direct discretionary review of the trial court's decision not to seal the entire competency evaluation. During the pendency of the appeal, the trial court stayed its order redacting the competency evaluation and sealed it in its entirety pending review.

---

[4] Chen alludes to numerous other disclosure issues in his brief, including disclosure of medical records to the prosecution and a public records request from Q13 Fox News. Here, we are reviewing only the trial court's decision not to seal the competency evaluation in its entirety before entering it into the court file. These other disclosure issues are not relevant to the resolution of this case.

Chen now argues that RCW 10.77.210 should create a presumption of privacy for competency evaluations when a trial court makes a determination of the defendant's competency. Two briefs were submitted in support of Chen's argument, an amicus brief from the American Civil Liberties Union of Washington and a joint amici brief filed by the Washington Defender Association, Disability Rights of Washington, and the Washington Association of Criminal Defense Lawyers. In support of the State's position, Allied Daily Newspapers of Washington, the Washington Newspaper Publishers Association, and the Washington Coalition for Open Government filed a joint amici brief.

ANALYSIS

A person found incompetent cannot be tried, convicted, or sentenced. If reason exists to doubt the defendant's competency, the court must order a competency examination and report. These competency evaluations are authorized pursuant to chapter 10.77 RCW, which, according to the parties,[5] also specifies that these evaluations should be disclosed only to certain entities. This provision states:

> Except [for certain situations not relevant here], all records and
> reports made pursuant to this chapter, shall be made available only
> upon request, to the committed person, to his or her attorney, to his or
> her personal physician, to the supervising community corrections

---

[5] For the purposes of this case, we accept the parties' contention that this statute limits disclosure, but we do question the idea that this is a true "privacy" statute. The statute makes no mention of the privacy interests at stake and, in fact, allows disclosure to a great many entities.

officer, to the prosecuting attorney, to the court, to the protection and advocacy agency, or other expert or professional persons who, upon proper showing, demonstrates a need for access to such records.[6]

RCW 10.77.210(1).

Chen argues that this limitation on disclosure should create a presumption that competency evaluations, even once they become court records,[7] remain private. However, as the State correctly responds, such a presumption of privacy arguably conflicts with our state constitutional requirement that all court records be presumptively open to public view. We have generally recognized that the presumption of openness can be overcome only if the *Ishikawa* factors, which balance these privacy concerns,[8] weigh in favor of sealing. Even if sealing is

---

[6] The sentence preceding this quote states in relevant part, "The person who has custody of the patient or is in charge of treatment shall keep records detailing all . . . treatment." RCW 10.77.210(1). Amicus Allied Daily Newspapers argues that the reference to the treatment provider means that the statute only limits what disclosures the treatment provider can make. The subsequent sentence on disclosure, however, refers to all documents created pursuant to chapter 10.77 RCW and, thus, encompasses more than documents created by the specific personnel mentioned in RCW 10.77.210.

[7] It is undisputed that this evaluation was a court record, and we need not evaluate what is or is not a court record.

[8] The *Ishikawa* factors state that "'[t]he proponent of closure . . . must make some showing [of compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right'"; "'[a]nyone present when the closure motion is made must be given an opportunity to object to the closure'"; "'[t]he proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests'"; "'[t]he court must weigh the competing interests of the proponent of closure and the public'"; and "'[t]he order must be no broader in its application or duration than necessary to serve its purpose.'" *In re Det. of D.F.F.*, 172 Wn.2d 37,

appropriate, the court should attempt to use redaction rather than wholesale sealing of the entire document. WASH. CONST. art. I, § 10; *Rufer v. Abbott Labs.*, 154 Wn.2d 530, 549, 114 P.3d 1182 (2005).

We have already rejected the principle that a statute can mandate privacy where the constitution requires openness. *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 848 P.2d 1258 (1993). In *Allied Daily Newspapers*, we held a statute unconstitutional that required courts to redact identifying information of child victims of sexual assault made public during the course of trial or contained in court records. Despite the important privacy interests of child victims of sexual assault, we recognized that the statute prevented the individualized assessment required under our interpretation of article I, section 10.

Similarly, we held a court rule unconstitutional that required involuntary commitment proceedings to be closed to the public. *In re Det. of D.F.F.*, 172 Wn.2d 37, 256 P.3d 357 (2011). Chen attempts to distinguish this case because it involved a courtroom proceeding and not a court record, but our jurisprudence has treated court records and court proceedings similarly.[9] Both *Allied Daily Newspapers* and *D.F.F.* recognize that court records and courtrooms are

---

41 n.5, 256 P.3d 357 (2011) (some alterations in original) (quoting *State v. Momah*, 167 Wn.2d 140, 149, 217 P.3d 321 (2009)).

[9] *See, e.g., State v. Waldon*, 148 Wn. App. 952, 958, 202 P.3d 325 (2009) (noting that the *Ishikawa* factors must be considered in order to "restrict access to court proceedings or records").

presumptively open and can be closed only when a trial court makes an individualized finding that closure is justified.

As amicus, the American Civil Liberties Union of Washington (ACLU) urges us to abandon this precedent, arguing that the *Ishikawa* factors should apply only to closures where there is no statutory guidance. However, in *Allied Daily Newspapers*, we analyzed the statutory directive and held that constitutional principles controlled. The ACLU argues the case should be interpreted narrowly because there the legislature passed the statute in an effort to prevent one specific newspaper from printing information about child victims. The ACLU claims, implicitly, that this legislative "animus" was a motivating factor behind our decision. But we never mentioned the legislative history the ACLU now relies upon to make its argument and nothing in the language of *Allied Daily Newspapers* suggests that it can be read narrowly or constrained to its specific facts. Nor do any of our more recent cases suggest limiting *Ishikawa* to situations where no statutory guidance is involved. The ACLU also argues that we should depart from our reasoning in *D.F.F.* because the case contained "no rationale or discussion of the previous case law beyond a bare-bones citation to *Ishikawa*." Br. of Amicus ACLU at 10 n.1. But, given our holding in *Allied Daily Newspapers*, little rationale or discussion was necessary to support the finding that the court's blanket closure rule

7

was unconstitutional. Applying our precedent, we hold that competency evaluations are presumptively open once they become court records. *Accord State v. DeLauro*, 163 Wn. App. 290, 258 P.3d 696 (2011).

Not only is this rule consistent with our precedent, the idea of a public check on the judicial process may be especially important where competency is at issue. If found to be incompetent, a defendant can have his or her freedom restricted for an undetermined amount of time without the full due process accorded in a criminal proceeding, while a determination of competency is no guarantee that the defendant fully understands the process in which he or she is embroiled. Essentially, competency determinations are a crucial turning point in the criminal process. A blanket rule shielding the evaluation from public view has the potential to implicate significant individual interests, as well as public concerns over the court proceedings. This is not to say that sealing is inappropriate in all cases but only that trial courts should recognize the important constitutional interests and follow the analysis outlined in the *Ishikawa* line of cases.

Chen makes numerous additional arguments as to why competency evaluations should be presumptively private. First, he argues that if we hold that the evaluations are subject to the presumption of openness, the statute would be rendered meaningless. This is incorrect, however, because the statute arguably

applies until such time as the competency evaluations become court records. Second, Chen emphasizes the important privacy interests at stake and the possibility that public access to competency evaluations could taint the jury pool. Although these are important considerations, they are contemplated by the *Ishikawa* factors and can be considered in a motion to seal. Third, he argues that the presumption of openness leads to inconsistent results. This, as it is with most standards requiring a case-by-case analysis, is true. However, a blanket closure rule would be inappropriate where our public-trial-rights jurisprudence requires case-by-case analysis. Moreover, Chen fails to establish that every competency evaluation is so similar as to justify a presumption that the result should be the same in every case.[10] Fourth, he argues that GR (Rules of General Application) 15 itself requires sealing because it states that statutory language permitting sealing is a "[s]ufficient privacy or safety concern[] that may be weighed against the public interest." GR 15(c)(2). But this argument twists GR 15's discretionary "may" into a mandatory requirement, which is contrary to the language of the rule.[11]

---

[10] As amici, both the ACLU and Washington Defender Association echo the argument that competency evaluations uniformly contain sensitive and privileged health care information. This may or may not be true in any specific case, as the evaluations do not always contain significant detailed and confidential information.

[11] In his reply brief, Chen raises for the first time arguments based on the GRs. We decline to address these arguments. *See, e.g., Cowiche Canyon Conservancy v. Bosley*, 118

Applying the presumption of openness to the facts here, the question becomes whether the trial court abused its discretion by not sealing the competency evaluation. Chen seeks only a blanket presumption of privacy and does not make the alternative argument that *Ishikawa* was applied incorrectly. Here, in reviewing the competency evaluation, we do not find it to contain significant amounts of private healthcare information. The record reflects that the trial court properly considered the *Ishikawa* factors and redacted certain information. We find no error and therefore affirm.

---

Wn.2d 801, 809, 828 P.2d 549 (1992) (declining to address an argument raised for the first time in a reply brief).

WE CONCUR:

Madsen, C.J.

Stephens, J.

Owens, J.

Wiggins, J.

Fairhurst, J.

González, J.

J.M. Johnson, J.

*State v. Chen (Louis Chao)*

No. 87350-0

GORDON McCLOUD, J. (concurring)—I agree with the majority's resolution of this case. Competency proceedings in a criminal case are presumptively open to the public.[1] That presumption of public access is guaranteed by both the state and federal constitutions. U.S. CONST. amend. I; WASH. CONST. art. I, § 10. Hence, even if RCW 10.77.210 did require the court to seal its records of competency evaluations, such a statute could not trump the constitutional right to an open courtroom.[2] The reason is that a blanket rule of closure is unacceptable and individualized findings must be conducted in each case. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607-09, 102 S. Ct.

---

[1] *United States v. Guerrero*, 693 F.3d 990, 1000-03 (9th Cir. 2012) (detailed discussion of application of experience and logic test to competency proceedings as a matter of first impression; holding that they are presumptively open, in accordance with the holdings of the majority of courts that have to consider this issue).

[2] *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604-05, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982); *Allied Daily Newspapers of Washington v. Eikenberry*, 121 Wn.2d 205, 209-10, 848 P.2d 1258 (1993).

2613, 73 L. Ed. 2d 248 (1982) (statute mandating courtroom closure during testimony of child victim in certain sex cases unconstitutional).

I write separately only to clarify that if a criminal defendant identifies a specific threat to his or her right to a fair trial in the particular case before the court (rather than in a class of cases generally), then the analysis is different. When a defendant seeks sealing to protect an important interest other than the fair trial right, the defendant must show a "serious and imminent threat" to that interest to obtain sealing. *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 37, 640 P.2d 716 (1982). But the right to a fair trial is more than an important interest—it is a compelling interest. *See, e.g., Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984) (right of defendant to fundamental fairness in jury selection process is a compelling interest). Under controlling United States Supreme Court precedent, the right to a fair trial trumps the right of access. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980) (right to a fair trial is "superior" to right to open courtroom under federal constitution); *Press-Enterprise*, 464 U.S. at 508 (no right ranks higher than the right of the accused to a fair trial; stated in context of closure of voir dire). Thus, when a defendant seeks sealing to protect his or her fair trial right, the defendant must show only a "'likelihood of jeopardy'" to that

right. *Ishikawa*, 97 Wn.2d at 37 (quoting *Federated Publ'ns, Inc. v. Kurtz*, 94 Wn.2d 51, 62, 615 P.2d 440 (1980)). Moreover, if the fair trial right is in jeopardy, the burden rests with the party contesting sealing to suggest effective alternatives. *Id.* at 37-38.

Louis Chen did not do this. He did not assert that unsealing threatened his right to a fair trial because of specific circumstances in this particular case. Chen's "Motion for Discretionary Review" (MDR) argued to this court that unsealing generally violated RCW 10.77.210 and would threaten his "privacy rights," MDR at 14, not that it posed a specific threat to some aspect of his right to a fair trial. He did assert that competency evaluations must be considered "confidential" and "privileged" because they generally affect the defendant's "right of privacy and his right to a fair trial," but he did not identify a specific threat to a fair trial in this case. MDR at 15; *see also* MDR at 18 (similarly arguing that unsealing competency reports can pose a risk to a "fair trial," but without identifying any particular risk faced by Chen—only that unsealing could chill disclosure in other situations); "Reply to State's Answer to Mot. for Discretionary Review and Direct

Review" at 1 (arguing for blanket exemption from *Ishikawa*'s constitutional requirements for competency evaluations, rather than for case-by-case balancing).[3]

The trial court still recognized that Chen's right "to a fair trial" was implicated in the *Ishikawa* analysis. MDR App. A at 2. But it found that there was no identified threat to that right posed by the remedy of limited redaction, rather than complete sealing, that it ordered. *See id.* at 4 ("The court determines, in this case, that the appropriate remedy is to redact the report.").

---

[3]Chen did not argue to this court that unsealing a competency evaluation would chill his personal incentive to be forthcoming. This is a substantial concern; a defendant cannot be forced to stand trial unless he or she has (1) "'a rational as well as factual understanding of the proceedings against him'" and (2) a "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (quoting solicitor general); *see Indiana v. Edwards*, 554 U.S. 164, 169-70, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008). Chen also did not argue to this court that the resulting publicity would significantly interfere with the right to choose an unbiased jury or obtain a fair trial. In contrast, sealing of court documents was largely upheld in a highly publicized political corruption case against former Mayor Cianci of Providence, Rhode Island, because of very specific facts showing a threat to a fair trial in that case:

> Political corruption cases tend to attract widespread media attention, and the Cianci case is a paradigmatic example. Here, moreover, the district court cited book and verse, cataloguing specific incidents that fueled its concerns that the defendants' ability to receive a fair trial was in danger of being substantively compromised by unrestrained disclosures. The court alluded specifically to leaks of information in violation of Rule 6(e) of the Federal Rules of Criminal Procedure and misbehavior by the lead prosecutor. In view of the notoriety of the case and the incidents recounted by the district court, we are convinced that the court's perception of a threat to the defendants' fair trial rights was objectively reasonable.

*In re Providence Journal Co.*, 293 F.3d 1, 14 (1st Cir. 2002).

Thus, where a defendant seeks courtroom closure or sealing to guard against an identified threat to his or her right to a fair trial, the defendant must show only a "'likelihood of jeopardy'" to that right; in contrast, a party seeking sealing to protect other, important, interests must make a more stringent showing of a "serious and imminent threat" to those interests. *Ishikawa*, 97 Wn.2d at 37 (quoting *Kurtz*, 94 Wn.2d at 62). Mr. Chen did not meet either standard, though. He did not identify a specific threat to his own right to a fair trial. Instead, he argued that RCW 10.77.210 requires sealing all competency evaluations. The trial judge rejected that blanket assertion and adopted the far more limited remedy of partial redaction to address particular concerns he noted in this specific case. I therefore concur.

Gordon McCloud, J.