# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) ) ) | No. 70820-1-I |
| v. | ) ) | UNPUBLISHED OPINION |
| JOSE ISMAEL MALDONADO, | ) ) | |
| Appellant. | ) ) | FILED: July 20, 2015 |

DWYER, J. — Jose Maldonado appeals from the judgment entered on a jury's verdict finding him guilty of child molestation in the first degree. Maldonado contends both that the trial court erred by admitting evidence of prior sex offenses pursuant to ER 404(b) and that the State presented insufficient evidence that he touched the victim for the purposes of sexual gratification. In a statement of additional grounds for review, Maldonado claims that he received ineffective assistance of counsel. Finding no error, we affirm.

I

In December 2010, Maldonado lived in a one-bedroom apartment in Seattle with his wife, Maria Gomez, and their five-year-old daughter, G.M. During her winter vacation from school, G.M. went to stay with her older sisters, 19-year-old Isabel and 24-year-old B.V., at B.V.'s home in Aberdeen. At one point during the visit, G.M. told B.V. that she did not want to go back home

"because her dad was hurting her." The following morning, while B.V. was giving G.M. a bath, B.V. noticed a bruise on G.M.'s upper thigh. B.V. finished bathing G.M. and told Isabel to ask G.M. about the bruise while B.V. took a shower. G.M. told Isabel that Maldonado had grabbed her thigh and squeezed "really hard." Isabel asked if Maldonado touched G.M. anywhere else and G.M. said yes and patted her vaginal area. Isabel asked if Maldonado touched G.M. over or under her underwear. G.M. said "under" and demonstrated by pulling her underwear forward and placing her hand underneath. G.M. told Isabel the abuse took place while she and Maldonado watched television in bed and that she told Maldonado to stop but "he would just ignore her and act like she didn't say anything." When B.V. returned, G.M. told B.V. that Maldonado "would warm up his hands and put them underneath her pants and her underwear and push down." G.M. told B.V. that the abuse happened when she and Maldonado were watching television together while Gomez was at work.

B.V. reported G.M.'s disclosures to police. As part of the investigation, child interview specialist Carolyn Webster interviewed G.M. G.M. told Webster that Maldonado "put his finger in my colita." G.M. demonstrated, through the use of a drawing as well as on her own body, that "colita" meant her vaginal area.[1] Consistent with her earlier disclosures, G.M. stated that the abuse occurred when she and Maldonado were watching television while Gomez was at work,

---

[1] A Spanish interpreter testified that "colita" is a term commonly used in Mexico which can mean "the bottom of a child, but it could be the front part or the back like the buttocks or the vagina."

and that Maldonado touched her underneath her underwear. G.M. told Webster that Maldonado did not talk to her or answer her when she talked to him, but merely continued to watch television. G.M. stated that it hurt because he "just squished it" and that afterwards Maldonado went to the bathroom and washed his hands.

The State charged Maldonado by amended information with two counts of child molestation in the first degree. Maldonado's first trial ended in a mistrial after the jury could not reach a unanimous verdict. For reasons that are unclear from the record, it appears that the State proceeded at retrial on one count of child molestation in the first degree – domestic violence.

Prior to the retrial, the State moved to introduce evidence of prior sexual misconduct by Maldonado against B.V. B.V. is Gomez's daughter from a prior relationship. B.V. was two or three years old when Gomez and Maldonado began their relationship. In approximately 1992 or 1993, when B.V. was six or seven, Maldonado and Gomez were living in Forks. Gomez discovered blood in B.V.'s underwear and B.V. disclosed that Maldonado was sexually abusing her. B.V. stated that Maldonado would come into her bedroom early in the morning, while Gomez was making his lunch for work, and "he would come in and remove my pants and underwear, whatever I was wearing, and he'd grab his hand up to his lips and tell me to be quiet." B.V. stated that Maldonado "would put his hands on top of my vagina and would rub, and then I would be really wet and it would hurt and I felt pressure." Gomez confronted Maldonado, who denied the allegations. Gomez allowed Maldonado to remain in the home because

-3-

Maldonado threatened to take Isabel away from her and have her deported to Mexico.

In 1994, the family moved to Aberdeen. For the first year, the family lived in an apartment where B.V. had her own bedroom with a door that locked. Maldonado did not abuse B.V. in that apartment. The family subsequently moved to another apartment where B.V.'s bedroom door did not have a lock. During the year the family lived in that apartment, Maldonado entered B.V.'s bedroom approximately three or four times a week late at night or in the early morning. On these occasions Maldonado would put his hand inside B.V.'s underwear and rub her vaginal area. Maldonado did not say anything other than telling B.V. to be quiet. Because Gomez was afraid that Maldonado was continuing to abuse B.V., she attempted to monitor his whereabouts by placing a small trash can behind B.V.'s bedroom door or sprinkling talcum powder around B.V.'s bed. When Gomez went into B.V.'s bedroom in the morning she frequently discovered that the trash can had been knocked over or there were footprints in the powder the size of "a big foot."

In 2006, B.V. reported the abuse that occurred in Forks to police. At the time B.V. did not remember the abuse that occurred in Aberdeen. Maldonado admitted during a subsequent Child Protective Services (CPS) investigation that he had touched B.V. in a sexual manner on one occasion while the family lived in Forks.

The State argued that the evidence of the prior abuse of B.V. was admissible for purposes of demonstrating motive, intent, a common scheme or

plan and absence of mistake or accident. The trial court ruled that evidence of

Maldonado abusing B.V. while the family lived in Forks was admissible on all of

these grounds.

> I do find by a preponderance of the evidence that molestation did occur of [B.V.] in Forks and that the probative value of this testimony outweighs its prejudicial effect. Certainly there is prejudicial effect, but I think there's very substantial probative value here, particularly for showing that this was in fact done for purposes of sexual gratification, also for showing that it wasn't done in some sort of accidental way or that [G.M.] misunderstood what was going on.
>
> And also I think that we've clearly got a common scheme or plan here in terms of the manner of the touching, being done with a hand, under the underwear, at the – that in the child's bedroom when the mother is either at work or making a meal, that it is done when the children are about the same age, that it's true that [B.V.] is not the biological daughter of Mr. Maldonado but was in the position of being a daughter at the time that this occurred, just as [G.M.] is, and I think that therefore it does meet the standards for common scheme or plan as well. So I'll – I will admit that testimony at trial.

The trial court initially ruled that the State had not proved Maldonado had abused

B.V. in Aberdeen by a preponderance of the evidence, finding it "inconsistent"

that B.V. did not remember the Aberdeen abuse when she reported the Forks

abuse in 2006. After further argument, the trial court reversed its ruling and

admitted the evidence.

> Okay. Well, I guess I will reconsider. I mean I have to admit that as I think about it, you know, Ms. Maria Gomez's testimony does support, to the extent that she can do so, corroborate elements of what [B.V.] is remembering, and so if we're simply on a more probable than not basis, which we're talking about preponderance of the evidence, then I guess on a more probable than not basis on [B.V.'s] testimony, you know, I find that it did occur and then it becomes relevant. So I think it is admissible.

The trial court did not explicitly state for which purposes the Aberdeen evidence was admissible. However, the trial court instructed the jury that "evidence of the defendant's prior sexual contact with [B.V.] may be considered by you only for the purposes of common scheme or plan, absence of mistake or accident and as evidence of sexual motivation as it relates to the current charge."

Maldonado testified at trial. He stated that he was using alcohol and drugs in 1993 and that he frequently had blackouts where he did not remember anything. He admitted to touching B.V.'s vaginal area on top of her clothes on one occasion while B.V. was asleep. He also admitted that he was not responsible for putting B.V. to bed or getting her dressed in the morning and had no reason to ever go into B.V.'s bedroom. He denied he had ever touched G.M. sexually but stated he may have massaged her legs with baby oil two or three times at Maria's suggestion.

The jury convicted Maldonado of one count of child molestation in the first degree – domestic violence. Maldonado appeals.

II

Maldonado argues that the trial court erred in admitting evidence, pursuant to ER 404(b), that he sexually abused B.V. We review a trial court's interpretation of an evidentiary rule de novo. State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). If the trial court has correctly interpreted the rule, we review the decision to admit or exclude evidence for abuse of discretion. DeVincentis, 150 Wn.2d at 17. A trial court abuses its discretion if its decision "is

manifestly unreasonable or based upon untenable grounds or reasons." State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

Under ER 404(b), a court is prohibited from admitting "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Such evidence may, however, be admissible for other purposes, such as demonstrating motive, intent, a common scheme or plan, or lack of mistake or accident. ER 404(b); State v. Fisher, 165 Wn.2d 727, 744, 202 P.3d 937 (2009). This court has recognized that evidence of prior bad acts is especially probative in cases involving child sexual abuse because of "(1) the secrecy in which the acts occur, (2) the vulnerability of the victims, (3) the lack of physical proof of the crime, (4) the degree of public opprobrium associated with the accusation, (5) the unwillingness of victims to testify, and (6) the jury's general inability to assess the credibility of child witnesses." State v. Baker, 89 Wn. App. 726, 736, 950 P.2d 486 (1997). Before admitting evidence pursuant to ER 404(b), the trial court must "(1) find by a preponderance of the evidence the misconduct actually occurred, (2) identify the purpose of admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value against the prejudicial effect of the evidence." Fisher, 165 Wn.2d at 745.

Maldonado first argues that the State failed to prove by a preponderance of the evidence that he sexually abused B.V. in Aberdeen.[2] We will uphold a trial

---

[2] Although not entirely clear, it appears that Maldonado is challenging the sufficiency of the evidence only as to the Aberdeen abuse. Maldonado did not designate the portion of the

court's finding that prior misconduct occurred if substantial evidence in the record supports the finding. State v. Benn, 120 Wn.2d 631, 653, 845 P.2d 289 (1993). Here, there was substantial evidence that Maldonado sexually abused B.V. in Aberdeen. B.V. testified that Maldonado frequently came into her bedroom late at night or in the early morning and rubbed her vaginal area under her clothes. Maldonado conceded that he had no reason to be in B.V.'s bedroom. And Gomez testified that she frequently found the trash can behind B.V.'s door knocked over or large footprints in talcum powder around the bed. Although Maldonado challenges B.V.'s credibility, we do not review a trial court's credibility determinations. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Maldonado further contends that the trial court erred in determining the evidence of prior sexual abuse was relevant for an admissible purpose. But the trial court properly admitted the evidence to demonstrate the existence of a common scheme or plan. When "the issue is whether the crime occurred, the existence of a design to fulfill sexual compulsions evidenced by a pattern of past behavior is probative." DeVincentis, 150 Wn.2d at 17-18. Admission of evidence for this purpose "requires substantial similarity between the prior bad acts and the charged crime." DeVincentis, 150 Wn.2d at 21. However, there is no requirement that the similarities "be atypical or unique to the way the crime is usually committed." DeVincentis, 150 Wn.2d at 13.

---

record wherein the State argued for admission of evidence of the Forks abuse, and in the portion of the record available to this court, trial counsel conceded that the State had met its burden as to the Forks abuse evidence.

Contrary to Maldonado's assertion, there were marked similarities between the prior offenses and the charged offense. Maldonado had a paternal relationship with both girls: G.M. was Maldonado's daughter and B.V. was Maldonado's step-daughter. Maldonado abused both girls in the home, while the girls were in bed, either sleeping or watching television. Maldonado began abusing both girls at a similar age, when G.M. was five years old and when B.V. was six years old. Finally, Maldonado's behavior during the prior offenses was substantially similar to the charged offense. Without speaking, other than telling B.V. to stay quiet, Maldonado placed his hand inside the girls' underwear and rubbed their vaginal areas. These similarities were sufficient to support the trial court's finding that the incidents demonstrated a common scheme or plan.[3]

In his reply brief, Maldonado argues for the first time that the trial court erred in failing to consider and weigh the lapse in time between the prior offenses and the charged offense in determining relevance. We will not address an issue first raised in a reply brief. RAP 10.3(c); State v. Chen, 178 Wn.2d 350, 358 n. 11, 309 P.3d 410 (2013).

III

Maldonado next contends that his trial counsel provided ineffective assistance by failing to request a limiting instruction regarding the ER 404(b) evidence. This contention is unavailing. As we have already noted, the trial

---

[3] Because we hold that the trial court properly admitted evidence of Maldonado's prior offenses under the common scheme or plan exception to ER 404(b), we need not address Maldonado's claim that the trial court erred in admitting the evidence for other purposes.

court expressly instructed the jury as to the permissible purposes for the ER 404(b) evidence, and the deputy prosecutor discussed this limiting instruction at length in closing argument. Maldonado implicitly abandons this issue in his reply brief and we do not consider it further.

IV

Maldonado next claims that insufficient evidence was adduced at trial to support the jury's verdict because the State did not establish that he touched G.M. for the purpose of sexual gratification. We disagree.

A claim of evidentiary insufficiency admits the truth of the State's evidence and all reasonable inferences from that evidence. State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). We view all evidence in the light most favorable to the State in order to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Joy, 121 Wn.2d 333, 338, 851 P.2d 654 (1993).

A person is guilty of child molestation in the first degree when the person has "sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). "Sexual contact" is "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). "Sexual gratification" is not an essential element of child molestation in the first degree; rather, it clarifies the meaning of "sexual contact" to exclude inadvertent touching or contact from being condemned as criminal. State v. Lorenz, 152 Wn.2d 22,

-10-

34, 93 P.3d 133 (2004). A jury may infer sexual gratification from the circumstances of the touching itself, where those circumstances are unequivocal and not susceptible to innocent explanation. See State v. Whisenhunt, 96 Wn. App. 18, 24, 980 P.2d 232 (1999).

It is clear that sufficient evidence was presented at trial to support the jury's finding that Maldonado touched G.M. for the purposes of sexual gratification. G.M. told Isabel, B.V., and Webster that Maldonado touched her vaginal area underneath her underwear while the two of them watched television together. G.M. stated that it hurt because Maldonado applied pressure. When G.M. asked Maldonado to stop, Maldonado ignored her. The evidence does not support an inference that the touching was fleeting or open to innocent explanation. A rational trier of fact could reasonably infer that Maldonado touched the intimate parts of G.M. for the purpose of gratifying his sexual desire.

V

In a pro se statement of additional grounds, Maldonado contends that he received ineffective assistance of counsel because trial counsel failed to present any evidence or file motions on his behalf. Maldonado's claim is contradicted by the record. Four witnesses testified on Maldonado's behalf, including an expert witness who challenged Webster's interviewing techniques, and trial counsel filed motions challenging the admissibility of child hearsay and the ER 404(b) evidence. Maldonado additionally claims that trial counsel was ineffective for failing to secure an interpreter for client meetings and for fraudulently overbilling him for services. These claims appear to rely on facts outside the record and

-11-

cannot be considered on direct appeal. <u>State v. McFarland</u>, 127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995).

Maldonado further contends that the trial court abused its discretion by permitting G.M. to testify as a witness, claiming it caused her undue stress because of her young age. Maldonado did not challenge G.M.'s testimony at trial. Issues raised for the first time on appeal are not reviewable unless they constitute "manifest error affecting a constitutional right." RAP 2.5(a)(3). Because Maldonado's claim is raised for the first time on appeal and does not affect a constitutional right, we decline to consider it. Maldonado's pro se claim regarding sufficiency of the evidence merely repeats that raised by appellate counsel and we need not further readdress it.

Affirmed.

Dwyer, J.

We concur:

Schindler, J.

Cox, J.

-12-