# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54280-3-II |
| Respondent, | |
| v. | |
| THOMAS BOSTELLE, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Thomas Bostelle appeals his convictions and sentence for one count of first degree incest, two counts of third degree rape of a child, and one count of third degree child molestation. Bostelle argues that the trial court denied his right to confrontation and right to present a defense by improperly excluding evidence that a cell phone belonged to the victim. Bostelle also argues that he received ineffective assistance of counsel because his attorney failed to move to admit a text message on his victim's cell phone as a prior inconsistent statement and because his attorney did not have the victim's cell phone analyzed before trial. And Bostelle argues that the trial court erred by imposing a sentence that exceeds the statutory maximum for his convictions on two counts of third degree rape of a child and one count of third degree child molestation.

We affirm Bostelle's convictions but remand for the trial court to strike the term of community custody imposed on the convictions for third degree rape of a child and the conviction for third degree child molestation.

FACTS

B.H.,[1] Bostelle's stepdaughter, alleged that Bostelle had molested and raped her several times in the home that they shared. The State charged Bostelle with one count of first degree incest, two counts of third degree rape of a child, and one count of third degree child molestation. The case proceeded to a bench trial.

A.    MOTION IN LIMINE

Before trial, the trial court heard motions in limine and considered whether evidence about particular text messages from B.H.'s cell phone was admissible. The texts were sent from B.H.'s cell phone to B.H.'s friend, who was not called as a witness, and contained an allegation that a stranger on the street had sexually assaulted and attempted to rape the person who sent the texts.

Kymberly Bostelle,[2] who is B.H.'s mother and Bostelle's wife, knew about these texts because she monitored B.H.'s text messages. This text monitoring was a condition of B.H. having a cell phone. The State agreed that questioning B.H. about these texts was "fair game on cross" and "the exact kind of relevant question of credibility and specific instance under [ER] 608 that is directly applicable in this case." 1 Verbatim Report of Proceedings (VRP) (Sept. 18, 2019) at 18.

The trial court ruled that:

[T]he information . . . of the prior allegation of an attempted rape, I think specifically is something that you all can go into because it does weigh on her

---

[1] We use initials to protect the victim's identity and privacy interests. General Order 2011-1 of Division II, *In re the Use of Initials or Pseudonyms for Child Witnesses in Sex Crimes* (Wash. Ct. App.),
https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2011-1&div=II.

[2] We refer to Kymberly Bostelle by her first name to avoid confusion with the defendant, Thomas Bostelle. No disrespect is intended.

credibility as to another allegation of a sexual assault which is alleged to have occurred by Mr. Bostelle.

1 VRP (Sept. 18, 2019) at 18-19.  However, the trial court also ruled that the evidence would be limited by the evidence rules and that the attorneys should object if the other party sought to admit evidence in a way that does not comply with those rules.

B.      B.H.'S TESTIMONY

On cross-examination, Bostelle's counsel asked B.H. if she recalled sending a text to a friend in which she claimed she was walking down the street and was sexually assaulted.  B.H. testified that she did not recall sending this text, so Bostelle's counsel confronted her with screenshots of text messages, which were marked as Exhibit 9.  B.H. reviewed the screenshots and stated, "No, I did not text that."  1 VRP (Sept. 18, 2019) at 229.  B.H. then testified that her parents supervised and had access to all the texts that were sent from her phone.  Bostelle's counsel did not move to admit the screenshots into evidence.

C.      CELL PHONE

Bostelle's counsel later attempted to have B.H.'s cell phone marked as an exhibit to show to B.H.'s brother as he was testifying.  Bostelle's counsel also requested a recess to "have experts review the phone and reach whatever conclusions they reach regarding the message that is on the phone."  2 VRP (Sept. 19, 2019) at 303.

The trial court denied counsel's request for a trial recess because "there's no expert that can come in and say that in fact based off of their ability to download the information on that phone that they can say with any certainty that the message was written by the alleged victim."  2 VRP (Sept. 19, 2019) at 307.  The trial court did, however, admit the cell phone as an exhibit for

demonstrative purposes and allow Bostelle's counsel to question witnesses about who owned the cell phone. The trial court also allowed Bostelle's counsel to use the cell phone to ask questions about the text message B.H. allegedly sent but limited questioning "to the actual language that's included in Exhibit 9." 2 VRP (Sept. 19, 2019) at 296.

B.H.'s brother testified that the cell phone belonged to B.H. and that he had seen B.H. texting on the phone.

D.      MOTION FOR RECONSIDERATION OF TRIAL COURT'S EVIDENTIARY RULING

After B.H.'s brother testified, the State moved the trial court to reconsider its decision to allow Kymberly to testify about her conversation with B.H. regarding the texts on the cell phone.[3] The State argued that because B.H. had denied sending the texts during her testimony, allowing Kymberly to testify about her conversation with B.H. about the texts would be improper impeachment with extrinsic evidence. After hearing argument on the motion, the trial court ruled that "any testimony by [Kymberly] about her confronting [B.H.] about the text messages, about [B.H.] didn't make any denials or statements to her" would be out-of-court statements, and "allowing [Kymberly] to testify about those statements is not proper evidence to be before the Court." 3 VRP (Sept. 26, 2019) at 386-87.

---

[3] Bostelle's counsel informed the trial court that Kymberly had previously confronted B.H. about these particular text messages. Bostelle's counsel also informed the court that Kymberly was prepared to testify that, during the conversation between Kymberly and B.H., B.H. denied that the assault on the street had occurred.

E.      VERDICT AND SENTENCING

The trial court found Bostelle guilty of all charges.  Bostelle moved for a new trial, arguing that the trial court improperly excluded evidence related to the cell phone and text messages.  The court denied the motion.

The trial court sentenced Bostelle to standard range sentences on all counts.  For the convictions for third degree rape of a child and the conviction for third degree child molestation, the court imposed the statutory maximum of 60 months per count, plus 36 months of community custody on each count.  The court wrote a notation on the judgment and sentence: "total not to exceed statutory maximum for any count."  Clerk's Papers at 41.

Bostelle appeals.

ANALYSIS

A.      EXCLUSION OF EVIDENCE

Bostelle argues that the trial court violated his right to confrontation and right to present a defense by excluding evidence that a cell phone containing a particular text message was B.H.'s.  Specifically, Bostelle identifies the issue as "[t]he court refused to allow Mr. Bostelle to present evidence the phone from which the text was obtained was B.H.'s."  Br. of Appellant at 2.  He contends that "[t]he evidence that the phone was B.H.'s was admissible to attack B.H.'s credibility."  Br. of Appellant at 12 (italics omitted).  Bostelle further argues that "Bostelle was not attempting to prove the falsity of B.H.'s text, rather he wished to have Kymberly Bostelle testify that the text was from the phone that Ms. Bostelle knew to be B.H.'s."  Br. of Appellant at 14.  And he argues that "[t]he failure to allow evidence that the damaging text came from B.H.'s phone supported Mr. Bostelle's defense, thus becoming critical in casting doubt on B.H.'s

allegations." Br. of Appellant at 15. Because the trial court did not exclude evidence that the phone was B.H.'s, the trial court did not violate Bostelle's right to confrontation or right to present a defense.

When reviewing a trial court's evidentiary ruling that potentially implicates constitutional rights, we engage in a "two-step review process." *State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696 (2019), *cert. denied*, 142 S. Ct. 726 (2021); *see State v. Jennings*, No. 99337-8, slip op. at 4 (Wash. Feb. 3, 2022)[4] (reiterating two-part test as clarified in *Arndt*). First, we review the trial court's evidentiary ruling for an abuse of discretion. *Arndt*, 194 Wn.2d at 797. Then, we consider de novo the constitutional question of whether the ruling deprived the defendant of their constitutional rights. *Id.* at 797-98.

ER 608(b) allows, at the trial court's discretion, cross-examination of specific instances of a witness's conduct for purposes of impeaching the witness's character for truthfulness or untruthfulness. However, specific instances of the conduct of a witness "may not be proved by extrinsic evidence." ER 608(b).

Here, there is nothing in the record to support Bostelle's argument that the trial court excluded evidence about the cell phone's ownership or refused to allow witnesses to testify that the phone belonged to B.H.[5] In fact, the record shows that this evidence was allowed. And B.H.'s

---

[4] https://www.courts.wa.gov/opinions/pdf/993378.pdf

[5] The trial court did exclude testimony from Kymberly about her later confrontation and conversation with B.H. about the text message. However, Bostelle does not challenge exclusion of that testimony on appeal.

brother did testify that the cell phone belonged to B.H. and that he had seen her send text messages from it.

Because the trial court did not exclude, but actually allowed, evidence that the cell phone belonged to B.H., Bostelle's argument that the trial court abused its discretion by excluding that evidence fails. And because the trial court did not exclude, but actually allowed, evidence that the cell phone belonged to B.H., the trial court did not violate Bostelle's constitutional rights. Bostelle's argument that the trial court erred by excluding evidence fails.[6]

B.      INEFFECTIVE ASSISTANCE OF COUNSEL

Bostelle argues that he was provided ineffective assistance of counsel because his trial counsel failed to admit B.H.'s text as a prior inconsistent statement under ER 613(b) and failed to have B.H.'s cell phone analyzed. We disagree.

1.      Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). We review ineffective assistance of counsel claims de novo. *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). A defendant claiming ineffective assistance of counsel has the burden to establish that counsel's performance was deficient and that the performance prejudiced the defendant's case.

---

[6] In his reply brief, Bostelle argues for the first time that the trial court violated his right to present a defense by not allowing testimony that B.H. admitted to her mother that she had made a prior false accusation of attempted sexual assault. We decline to address this argument raised for the first time in a reply brief. *See State v. Chen*, 178 Wn.2d 350, 414 n.11, 309 P.3d 410 (2013) (declining to address arguments raised for the first time in reply brief).

*Grier*, 171 Wn.2d at 32-33. Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Id.* at 32-33.

Counsel's performance is deficient if it falls "'below an objective standard of reasonableness.'" *Id.* at 33 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "There is a strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A defendant may overcome this presumption by showing that "'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). However, if counsel's conduct can be characterized as a legitimate trial strategy or tactic, then counsel's performance is not deficient. *Id.* at 33. To establish prejudice, the defendant must "prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862.

For ineffective assistance of counsel claims based on an attorney's failure to take a certain action, the defendant must show that the action likely would have been successful. *See State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012) (requiring showing that severance motion likely would have been granted); *State v. Case*, 13 Wn. App. 2d 657, 673, 466 P.3d 799 (2020) (requiring showing that objection likely would have been sustained); *State v. D.E.D.*, 200 Wn. App. 484, 490, 402 P.3d 851 (2017) (requiring showing that motion to suppress likely would have been granted).

2.      Analysis

a.      Failure to admit text message as a prior inconsistent statement

Bostelle argues that his counsel provided ineffective assistance by failing to move to admit a text message from B.H.'s cell phone as a prior inconsistent statement under ER 613(b).

ER 613(b) provides that

> [e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

"In general, a witness's prior statement is admissible for impeachment purposes if it is inconsistent with the witness's trial testimony." *State v. Newbern*, 95 Wn. App. 277, 292, 975 P.2d 1041, *review denied*, 138 Wn.2d 1018 (1999).

Here, the evidence in question was a text message on B.H.'s phone stating that the sender had been the victim of sexual assault committed by a stranger on the street. At trial, B.H. testified that she did not send the text. These statements are not inconsistent with each other. And B.H. did not testify inconsistently with the text's substance. In fact, she never testified about the prior unrelated sexual assault at all. Therefore, had Bostelle's counsel moved to admit the text message as a prior inconsistent statement under ER 613(b), the text message would not have been admitted. *See* ER 613(b); *Newbern*, 95 Wn. App. at 292.

Bostelle has failed to show that a motion to admit the text message as a prior inconsistent statement would likely have been granted, so he has not met the standard required for his ineffective assistance of counsel claim to be successful. *See Emery*, 174 Wn.2d at 755; *Case*, 13

Wn. App. 2d at 673; *D.E.D.*, 200 Wn. App. at 490. Thus, Bostelle's ineffective assistance of counsel claim fails because he has not shown deficient performance.

    b.  Failure to have cell phone analyzed

  Bostelle argues that his attorney's failure to have B.H.'s cell phone analyzed constitutes ineffective assistance of counsel.

  When seeking relief from counsel's claimed failure to investigate, a defendant "'must show a reasonable likelihood that the investigation would have produced useful information not already known to defendant's trial counsel.'" *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 739, 101 P.3d 1 (2004). "'In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 356, 325 P.3d 142 (2014) (quoting *Strickland*, 466 U.S. at 691).

  Here, Bostelle's attorney did not have B.H.'s cell phone analyzed by an expert before trial but requested a recess during trial to have the phone analyzed after B.H. denied sending a text message while on the witness stand. The trial court denied the request for a recess because "there's no expert that can come in and say that in fact based off of their ability to download the information on that phone that they can say with any certainty that the message was written by the alleged victim." 2 VRP (Sept. 19, 2019) at 307.

  The record shows B.H. did not have exclusive control of the phone. In fact, Kymberly and Bostelle had access to B.H.'s phone as they would monitor B.H.'s texts as a condition of her having a cell phone. There also is no evidence that an expert could show that it was B.H. who wrote the text in question. At most, an expert analysis could show that the text came from B.H.'s cell phone.

But Bostelle's counsel already knew that the text came from B.H.'s cell phone and witnesses testified to that effect. And without knowing who had the phone at the time the text was sent, an expert's testimony that the text came from B.H.'s phone would not constitute useful information. Because there was no "reasonable likelihood that [expert analysis] would have produced useful information not already known" to Bostelle's counsel, Bostelle has failed to show that his attorney's failure to investigate constitutes ineffective assistance of counsel. *Davis*, 152 Wn.2d at 739. Therefore, Bostelle's ineffective assistance of counsel claim fails.

C.      STATUTORY MAXIMUM SENTENCE

Bostelle argues that the trial court erred by imposing a sentence that exceeds the statutory maximum for his offenses. The State concedes that this error occurred and does not oppose remand for the trial court to strike community custody terms for the convictions for third degree rape of a child and the conviction for third degree child molestation. We accept the State's concession and remand to the trial court to strike the community custody terms on the convictions for third degree rape of a child and the conviction for third degree child molestation.

A trial court "may not impose a sentence providing for a term of confinement or community custody that exceeds the statutory maximum for the crime." RCW 9.94A.505(5).[7] Prior to 2009, when any trial court imposed an aggregate term of confinement and community custody that potentially exceeded the statutory maximum, the trial court was required to include a notation explicitly stating that the total term of confinement and community custody actually served may

---

[7] RCW 9.94A.505 was amended in 2019 and 2021. However, there were no substantive changes made affecting this opinion. Therefore, we cite to the current statute.

not exceed the statutory maximum. *See In re Pers. Restraint of Brooks*, 166 Wn.2d 664, 675, 211 P.3d 1023 (2009).

In 2009, the legislature enacted RCW 9.94A.701(10).[8] Following the enactment of this statute, the *Brooks* notation procedure no longer complies with statutory requirements. *State v. Boyd*, 174 Wn.2d 470, 472, 275 P.3d 321 (2012). Instead, "*[t]he term of community custody . . . shall be reduced* by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime." RCW 9.94A.701(10) (emphasis added).

Here, the maximum sentences for third degree rape of a child and third degree child molestation are 60 months. RCW 9A.44.079(2);[9] RCW 9A.44.089(2);[10] RCW 9A.20.021(1)(c). The trial court imposed a sentence of 60 months of confinement plus 36 months of community custody on the convictions for third degree rape of a child and the conviction for third degree child molestation. Together, those combined terms for each crime exceed the statutory maximum sentence for the crimes. Although the trial court included a *Brooks* notation on the judgment and sentence, the *Brooks* notation procedure no longer complies with statutory requirements. *Boyd*, 174 Wn.2d at 472. Thus, the trial court erred by imposing a sentence in excess of the statutory

---

[8] This subsection was originally codified as RCW 9.94A.701(8). It was renumbered to subsection (9) in 2010 and renumbered to subsection (10) in 2021. No substantive changes were made affecting this opinion. Therefore, we cite to the current statute.

[9] RCW 9A.44.079 was amended in 2021. However, there were no substantive changes made affecting this opinion. Therefore, we cite to the current statute.

[10] RCW 9A.44.089 was amended in 2021. However, there were no substantive changes made affecting this opinion. Therefore, we cite to the current statute.

No. 54280-3-II

maximum. *See* RCW 9.94A.505(5). We remand to the trial court to strike community custody terms on the convictions for third degree rape of a child and the conviction for third degree child molestation.

We affirm Bostelle's convictions. However, we remand to the trial court to strike the community custody terms on the convictions for third degree rape of a child and the conviction for third degree child molestation.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, C.J.

We concur:

Maxa, J.

Glasgow, J.