[No. 16160-5-II. Division Two. August 9, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. ERNEST L. WILLIAMS, *Appellant.*

*Ronald D. Ness* and *Ronald D. Ness & Associates*, for appellant (appointed counsel for appeal).

*Russell D. Hauge, Prosecuting Attorney*, and *Patricia M. Stuart, Deputy*, for respondent.

MORGAN, J. — Ernest L. Williams appeals from convictions on two counts of delivery of a controlled substance. We reverse and remand for new trial.

This drug case involves three controlled buys. The first occurred mid-afternoon on November 19, 1991; the second mid-afternoon on November 26, 1991; and the third mid-afternoon on December 3, 1991. The first two occurred inside a house located at 34 Galyan Drive, Bremerton; the third occurred inside a house located at 932 Pacific Avenue, Bremerton. On each occasion, a Bremerton Police Officer named Steele searched an informant named Castro, found no drugs, and provided money for Castro to use in making a buy. Castro then entered the house and came out a few minutes later. After driving to a different location, with Steele following, Castro handed cocaine to Steele. According to Steele's understanding at the time, Castro said he had bought the cocaine from "Ray."

On December 5, 1991, Castro identified "Ray" as Williams. It is undisputed that Williams' street name is "Red."

On March 30, 1992, the State charged Williams with two counts of delivery of a controlled substance, based on the November 19 and November 26 buys. Later, the State added a third count, charging the December 3 buy.

On May 5, 1992, the trial court held an omnibus hearing at which Williams was present. The prosecutor and Williams' counsel submitted a written "Omnibus Stipulation" in which Williams' attorney stated that the nature

of the defense would be "[g]eneral denial, [e]ntrapment."[1] The attorney had not discussed this statement with Williams before the hearing, it was not discussed aloud at the hearing, and the stipulation was not signed by Williams.

A jury trial commenced on May 28, 1992. Castro testified that he had made three buys from Williams. Defense counsel asked, "You said [to the police] the person you bought from was named Ray, isn't that correct?" Castro answered, "That's correct."[2] Castro went on to explain that he had initially thought Williams' name was Ray. He learned it was "Red" when Steele told him so, and when he saw the name "Red" tatooed on Williams' arm.

Steele testified to what he had observed concerning each buy, and that Castro had been employed as an informant since August 1991, with compensation of $1,100 per month. He further testified that he had misunderstood what Castro had said at the time he turned over the cocaine—"[W]hen I thought he was saying Ray, he was actually saying Red."[3] Steele explained that Castro "has a very strong Mexican accent, and he has a hard time saying the D in the American language."[4]

Taking the stand in his own defense, Williams denied selling drugs to Castro. Rather, he said, a person named Ray Curry was the one who had sold to Castro.

During the prosecutor's cross-examination of Williams, the following exchange occurred:

Q. [Prosecutor]: . . . On May 5th of 1992, you had an omnibus hearing where the defense was going to be a general denial, you didn't do it.

A. [Williams]: Yes.

Q. But weren't you also claiming that your other defense was entrapment, that police tricked you into selling cocaine?

[1]Clerk's Papers at 12.

[2]Report of Proceedings (May 29, 1992) at 92.

[3]Report of Proceedings (May 29, 1992) at 14.

[4]Report of Proceedings (May 29, 1992) at 14.

A. No, that's not correct . . . . [Y]ou talked to me on this here . . . I stated to you then that Lopez had purchased drugs from Ray. . . . I told you that I was not present when the drugs were transactioned . . . .[5]

Q. (Interposing) At your omnibus hearing, though, you state that your other defense was going to be that you were tricked into selling drugs; right?

A. (no response)

Q. How the police entrapped you.

A. What, here, at the omnibus hearing?

Q. Em-hem.

A. I didn't have no omnibus hearings here.

Q. All right, you weren't present at an omnibus hearing?

A. Here?

Q. Em-hem.

A. I was at it, but I didn't testify to anything that my friend tricked me into selling drugs.[6]

Following this exchange, the prosecutor moved to admit a certified copy of the omnibus stipulation. She argued "the State is entitled to impeach the defendant"[7] with his attorney's statement that the defense would be "general denial, entrapment." Williams' attorney objected, initially arguing mistake; he said the statement in question

is error on my part, and my copy [of the stipulation]. . . doesn't have "entrapment", it basically says "General denial." Mr. Williams didn't see the Stipulation.[8]

The attorney next argued that the stipulation consti-

---

[5]As the prosecutor later explained to the trial court, Williams was referring to a pretrial conversation between her and himself. The conversation took place in the jail, at a time when Williams had elected to represent himself.

[6]Report of Proceedings (May 28, 1992) at 75-76.

[7]Report of Proceedings (May 28, 1992) at 100-01.

[8]Report of Proceedings (May 28, 1992) at 101.

tuted improper impeachment.[9] Finally, he argued that "you can't have entrapment and general denial at the same time;"[10] thus, he said, the statement set forth inconsistent defenses, and it merely put the prosecutor "on notice that those may be the possible defense[s]."[11]

The trial court overruled these objections and admitted the stipulation, which ultimately went to the jury room as an exhibit. Defense counsel then moved to withdraw, so he could take the stand and testify that he had never discussed the stipulation with Williams. The trial court denied the motion to withdraw, but nonetheless allowed counsel to take the stand and testify as he proposed.

The jury convicted on the first two counts but deadlocked on the third, which ultimately was dismissed. Later, Williams was sentenced to standard range concurrent sentences of 108 months each.

The dispositive issue on appeal is whether the statement, "general denial, entrapment" was properly admitted.[12] We consider (1) whether it was properly admitted and (2) whether any error was harmless.

I

Turning to admissibility, we begin with the fundamentals of the hearsay rule. The basic definition of hearsay is set forth in ER 801(c). It provides:

> "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

A statement that falls within this definition is inadmissible, subject to various exemptions and exceptions. ER 802; see ER 801(d) (exemptions); ER 803-04 (exceptions).

---

[9]Report of Proceedings (May 28, 1992) at 102.

[10]Report of Proceedings (May 28, 1992) at 101-02.

[11]Report of Proceedings (May 28, 1992) at 104.

[12]Williams also argues that the trial court violated his right to counsel by not allowing his attorney to withdraw before the attorney testified, and by leaving him without counsel while the attorney was on the witness stand. We do not reach these issues.

Here, it is undisputed that Williams' attorney was the declarant, and that he did not make the statement while testifying at the trial. Thus, the questions are (1) whether the statement was offered to prove the truth of the matter asserted, and (2) whether the statement was exempted or excepted from the basic definition of hearsay.

## A

At trial, the State argued that it was offering the statement only to impeach Williams' credibility. Williams' attorney responded, "I don't think it should be [used for] impeachment."[13] The question thus raised was whether the statement was being offered to prove the truth of the matter asserted.

A trial witness' *own* prior inconsistent statement is not offered to prove the truth of the matter asserted to the extent it is offered to cast doubt on the witness' credibility. To say that a witness' prior statement is "inconsistent" is to say it has been compared with, and found different from, the witness' trial testimony. This comparison, *without regard to the truth of either statement*, tends to cast doubt on the witness' credibility, for a person who speaks inconsistently is thought to be less credible than a person who does not. 1 *McCormick on Evidence* § 34, at 114 (John W. Strong ed., 4th ed. 1992).[14] Thus, to the extent that a witness' *own* prior inconsistent statement is offered to cast doubt on his or her credibility, it is not offered to prove the truth of the matter asserted, it is nonhearsay, and it may be admissible "to impeach." *Webb v. Seattle*, 22 Wn.2d 596, 610, 157 P.2d 312, 158 A.L.R. 810 (1945).

 This reasoning does not extend to situations in

---

[13]Report of Proceedings (May 28, 1992) at 102.

[14]*McCormick* states:

> The theory of attack by prior inconsistent statements is not based on the assumption that the present testimony is false and the former statement true but rather upon the notion that talking one way on the stand and another way previously . . . raises a doubt as to the truthfulness of both statements.

*McCormick on Evidence* § 34, at 114.

which the prior inconsistent statement was made by someone other than the trial witness. If A's prior out-of-court statement is inconsistent with B's trial testimony, A's statement casts doubt on B's credibility if *A's statement is true*; but A's statement does not cast doubt on B's credibility *if A's statement is not true*. In this situation, A's statement is offered to prove the truth of the matter asserted, even though it also is offered "to impeach" B.

At least two Washington cases are on point. In *Singer v. Metz Co.*, 101 Wash. 67, 72, 171 P. 1032 (1918), a case in which one Spangler was impeached with the out-of-court inconsistent statement of one Helvey, the Supreme Court said, "A witness cannot be impeached by statements of others for which he is not responsible and which have not been approved by him." And in *Miller v. Kennedy*, 11 Wn. App. 272, 291, 522 P.2d 852 (1974), *aff'd*, 85 Wn.2d 151, 530 P.2d 334 (1975), a case in which a letter "did not contain inconsistent pronouncements of the person whose credibility was sought to be impeached," Division One said the letter "contained merely the contradictory statements of another, would-be hearsay, and [was] not available for impeachment purposes."

In this case, the statement at issue was made not by Williams, but by his attorney. Thus, even though it was offered "to impeach" Williams, it was also offered to prove the truth of the matter asserted, and it was inadmissible unless exempted or excepted from the basic definition of hearsay.

## B

Citing *State v. Acosta*, 34 Wn. App. 387, 392, 661 P.2d 602 (1983), *rev'd on other grounds*, 101 Wn.2d 612, 683 P.2d 1069 (1984), the State implicitly argued at trial that the statement in issue was the admission of a party opponent. Williams argued it was not, because it set forth inconsistent defenses and merely put the prosecutor "on

notice that those may be the possible defense[s]."[15] The question thus raised was whether the statement was exempted from the basic definition of hearsay on grounds it was the admission of a party opponent.

ER 801(d)(2) exempts certain admissions of a party opponent from the basic definition of hearsay. It provides, among other things, that a statement is the admission of a party opponent if it "is offered against a party and is . . . a statement by a person authorized by the party to make a statement concerning the subject." ER 801(d)(2)(iii). In alternative terms, it provides that a statement will be the admission of a party opponent if it was made by a "speaking agent" of the party against whom it is offered at trial. Washington comment to ER 801(d)(2), eighth and ninth paragraphs.[16]

Generally, an attorney representing a client in litigation is authorized to speak for the client concerning that litigation. Thus, an attorney's statement concerning the litigation sometimes qualifies, when offered against the client, as the admission of a party opponent. *Acosta*, 34 Wn. App. at 392; *State v. Dault*, 19 Wn. App. 709, 715-18, 578 P.2d 43 (1978); *Seattle v. Richard Bockman Land Corp.*, 8 Wn. App. 214, 216, 505 P.2d 168 (quoting *Brown v. Hebb*, 167 Md. 535, 175 A. 602, 97 A.L.R. 366 (1934)), *review denied*, 82 Wn.2d 1003 (1973). In criminal cases, however, this rule should be applied with caution, in part due to the danger of impairing the right to counsel. *United States v. Harris*, 914 F.2d 927, 931, 117 A.L.R. Fed. 877 (7th Cir.

---

[15]Report of Proceedings (May 28, 1992) at 104.

[16]The other parts of ER 801(d)(2) clearly do not apply here. Subdivision (d)(i) applies when the declarant of the statement is the party on trial, a fact not present here. Subdivision (d)(ii) applies when the party against whom the statement is offered has done something to adopt it or manifest belief in its truth. Here, it is uncontroverted that Williams did nothing of that sort; on the contrary, he denied the statement when he first learned of it, which was during trial. Peculiarly, subdivision (d)(iv), a Washington mutation of Federal Rule 801(d)(2)(D), appears to have been intended to have the same meaning as subdivision (d)(iii). *See* Washington comment to ER 801(d)(2), eighth and ninth paragraphs. And subdivision (d)(v) relates to coconspirators, of which there are none here.

1990); *United States v. Valencia*, 826 F.2d 169, 172 (2d Cir. 1987).

■ Although an attorney's statement may sometimes qualify as an admission of the client when offered against the client, it does not qualify when the attorney is pleading alternatively or inconsistently on the client's behalf. Thus, a leading commentator states:

> It can readily be appreciated that pleadings of this nature are directed primarily to giving notice and lack the essential character of an admission. To allow them to operate as admissions would frustrate their underlying purpose. Hence the decisions with seeming unanimity deny them status as judicial admissions, and generally disallow them as evidentiary admissions.

2 *McCormick on Evidence* § 257, at 150-51 (John W. Strong ed., 4th ed. 1992); *see also Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d Cir. 1994); *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990), *cert. denied*, 504 U.S. 957 (1992); *MacHeca v. Fowler*, 412 S.W.2d 462, 465 (Mo. 1967).

■ In this case, defense counsel was asserting alternative and inconsistent defenses when he said in the omnibus stipulation, "General denial, entrapment." By saying "general denial," he was saying that Williams had not committed the act charged. By saying "entrapment," he was saying that Williams had committed the act charged, but only because he had been lured or induced into doing so. *See* RCW 9A.16.070(1). In Washington, the inconsistency of these statements has been recognized in a number of cases holding that evidence is insufficient to support an entrapment instruction if the defendant denies committing the crime. *State v. Hansen*, 69 Wn. App. 750, 764-65, 850 P.2d 571 (1993), *rev'd on other grounds*, 124 Wn.2d 719, 881 P.2d 979 (1994); *State v. Galisia*, 63 Wn. App. 833, 836, 822 P.2d 303, *review denied*, 119 Wn.2d 1003 (1992); *State v. Matson*, 22 Wn. App. 114, 121, 587 P.2d 540 (1978); *State v. Walker*, 11 Wn. App. 84, 87, 521 P.2d 215 (1974); *State v. Draper*, 10 Wn. App. 802, 806-07, 521

P.2d 53, *review denied*, 84 Wn.2d 1002 (1974); *see also* . *Mathews v. United States*, 485 U.S. 58, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988) (recognizing that denial of the act and entrapment are inconsistent defenses, but allowing defendant to assert both at trial). We conclude that the statement in issue did not qualify as the admission of a party opponent, it was not exempted from the basic hearsay definition in ER 801(c), and it was erroneously admitted.

Nothing said herein means that the statement of a defense attorney can or cannot be used against his or her client under circumstances in which the attorney has not asserted alternative and inconsistent defenses. Accordingly, we have no quarrel with *Dault*, 19 Wn. App. at 715-18, or *Acosta*, 34 Wn. App. at 391-92. In those cases, each attorney simply asserted one fact or defense—that his client had not been present at the time of the crime.[17] No attorney asserted inconsistent or alternative defenses, which is the crux of the problem here.[18]

Nor does anything said herein grant a criminal defendant the right to plead alternatively or inconsistently at an omnibus hearing.[19] That question is not before us, because the adequacy of Williams' omnibus answer was never contested. We hold only that when an attorney is permitted to state alternative or inconsistent defenses on

---

[17]In *Acosta*, this representation was made by stating the defendant would present an alibi defense. 34 Wn. App. at 391.

[18]We also note that in *Dault* and *Acosta*, each client was present to hear his attorney's statement, and the courts seem to have relied in part on a theory of adoptive admission. *See* ER 801(d)(2)(ii). That theory is inapplicable here, for the statement in issue was first made known to Williams at the time he denied it.

[19]We note in passing that United States Supreme Court and various other courts have found such a right in their criminal rules or other law. *See, e.g., Mathews v. United States*, 485 U.S. 58, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988); *Koritta v. State*, 263 Ga. 703, 438 S.E.2d 68 (1994); *Zimmerman v. State*, 628 A.2d 62 (Del. 1993); *People v. Whiters*, 146 Ill. 2d 437, 588 N.E.2d 1172 (1992); *People v. Cross*, 187 Mich. App. 204, 466 N.W.2d 368 (1991); *People v. Dawson*, 173 A.D.2d 262, 569 N.Y.S.2d 659 (1991); *State v. Wright*, 163 Ariz. 184, 786 P.2d 1035 (1989).

behalf of his or her client, the statement does not qualify as the admission of a party opponent.

## II

The State argues that admission of the omnibus stipulation "is at worst harmless error."[20] The error here was evidential, and evidential error is not harmless if, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. *State v. Jackson*, 102 Wn.2d 689, 695, 689 P.2d 76 (1984); *State v. Robtoy*, 98 Wn.2d 30, 44, 653 P.2d 284 (1982).

The real issue at trial was whether Castro had purchased drugs from Williams or someone else. When Castro bought drugs on November 19, several other people were in the house. The record does not show who was present on November 26. The police could not see Castro while he was inside the house. As a result, the only evidence that Castro purchased from Williams, as opposed to someone else, was Castro's own testimony.

Williams testified that Ray Curry sold to Castro. Castro, according to his own testimony, initially told Officer Steele that he had purchased from a person named Ray.[21] Castro was a paid informant, and the jury deadlocked on the December 3 transaction, even though Castro said he had purchased from Williams on that occasion. The case was a contest between Williams' and Castro's credibility, and we cannot say that using the omnibus stipulation to impeach Williams was an error without effect.

Reversed and remanded for new trial.

BRIDGEWATER, J., and PETRICH, J. Pro Tem., concur.

---

[20]Br. of Resp't at 7.

[21]Steele testified inconsistently with this. According to him, Castro initially said he had purchased from "Red," but he said it with such heavy accent that Steele misunderstood.