# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50033-7-II |
| Respondent, | |
| v. | |
| RICHARD GERALD NEIGHBARGER, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Richard Neighbarger appeals numerous convictions for first degree child rape, first degree child molestation, and first degree incest arising from sexual abuse of ZN[1] and JN. Neighbarger argues that (1) the trial court violated his right to present a defense, (2) the trial court erred under ER 404(b) when it admitted evidence of Neighbarger's lustful disposition, (3) the trial court erred when it allowed the State to amend count XIII during trial, (4) insufficient evidence supports his convictions, (5) cumulative error denied his right to a fair trial, and (6) the trial court erred at sentencing. In addition, (7) Neighbarger's statement of additional grounds (SAG) contains numerous arguments. Disagreeing with Neighbarger's arguments, we affirm.

---

[1] We use the minor victims' initials to protect their privacy. Gen. Order 2011-1 of Division II, *In re the Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases* (Wash. Ct. App.), *available at* http://www.courts.wa.gov/appellate_trial_courts/.

FACTS

## I. Background

ZN and JN were Neighbarger and Sarah Neighbarger's children. Neighbarger was born in 1979. JN was born in 1996, and ZN was born in 2000. When JN was four or five years old and ZN was under a year old, the family lived with Neighbarger's mother for about a year, and when JN was six or seven years old, they lived in a rental home. When JN was seven or eight years old, the family moved into an apartment. In 2004, the family purchased and moved into a house in Puyallup.

In early September 2015, ZN disclosed that Neighbarger sexually abused him as a child. When law enforcement interviewed ZN, he discussed the child sexual abuse against himself and JN and disclosed that Neighbarger also attempted sexual contact with JN as an adult. After an investigation, law enforcement arrested Neighbarger. In September 2016, the State charged Neighbarger by amended information with eight counts of first degree child rape (counts I-IV, VI-VIII, XI), three counts of first degree child molestation (counts V, IX, X), and two counts of first degree incest (counts XII and XIII).

## II. Pretrial

Before trial, defense counsel moved to exclude evidence regarding the incident when Neighbarger attempted sexual contact with JN as an adult. The trial court admitted testimony about the event and the content of text messages.

## III. State's Testimony

The State presented testimony from ZN and JN; ZN's high school teacher, Corey Evans; ZN's high school Assistant Principal Richard Lasso; numerous law enforcement officers involved

in the investigation after ZN's abuse disclosure; expert witness and forensic interviewer Keri Arnold; and Sarah.[2]

## A.  ZN'S TESTIMONY

ZN described four times when Neighbarger sexually abused ZN or JN.  ZN described the first instance that he remembered Neighbarger sexually abusing him in the bedroom.  While the sexual abuse occurred, Neighbarger watched child pornography on his computer.  Second, ZN described sexual abuse by Neighbarger that occurred in the living room of his house when he was around 7 years old.  Third, ZN described sexual abuse involving himself, JN, and Neighbarger in the living room when ZN was about 10 years old.  Lastly, when ZN was approximately 12 years old, he walked into JN's bedroom and accidentally observed Neighbarger sexually abusing JN.

## B.  JN'S TESTIMONY

JN testified that Neighbarger sexually abused him numerous times.  JN was 4 years old when Neighbarger first sexually abused JN at his grandmother's residence.  When JN was 6 or 7 years old, Neighbarger sexually abused JN in the rec room of the rental home.  JN described sexual abuse at the Puyallup home in the living room involving himself, ZN, and Neighbarger.  JN also testified that Neighbarger sexually abused him as a child in JN's bedroom, Neighbarger's bedroom, the living room, the kitchen, and the front room.  The sexual abuse ended when he was 14 or 15 years old.

Finally, in June 2015, when JN was 19 years old, he approached Neighbarger to get advice about a medical condition.  Neighbarger attempted sexual contact with JN in the kitchen of the

---

[2] For clarity, Sarah Neighbarger will be referred to throughout by her first name.

Puyallup home. JN told him "no." 6 Verbatim Report of Proceedings (VRP) at 395. JN sent a text message to ZN to let him know the details of what had happened. Defense counsel cross-examined JN regarding the timeline of sexual abuse and inconsistencies between what he told police in his initial interview and inconsistencies between JN's and ZN's testimony.

## C. EXPERT TESTIMONY

Arnold, forensic interviewer for the Pierce County Prosecuting Attorney's Office, testified about her professional experience interviewing children who have experienced trauma. She stated that children's sense of time develops slowly, and they do not always precisely identify the time when a given sexual abuse incident occurred. And she discussed how traumatic experiences can result in generalized, routine descriptions about abusive events and a flat affect when discussing abuse.

## D. SARAH NEIGHBARGER

After ZN's disclosure, Sarah refused to provide consent to search ZN's phone. Sarah denied that she told law enforcement that she and Neighbarger played pornography in the living room in the children's presence. Sarah admitted that she told a Child Protective Services (CPS) worker that Neighbarger grabbed JN and ZN by the back of the neck to "hold them still," but he never held the front of their necks or choked them. 4 VRP at 231.

## E. LAW ENFORCEMENT TESTIMONY

Puyallup Police Department Detective Shelby Wilcox testified that Sarah had stated during the investigation that "it was commonplace for pornography to be running in the house." 5 VRP at 285. Sarah also stated that she "knew that [ZN and JN] were hit with objects and choked." 5

VRP at 287. Detective Wilcox said that Sarah "appeared to be kind of cold" to ZN after he disclosed the abuse. 5 VRP at 280.

Sergeant Tamera Pihl of the Puyallup Police Department testified about the investigation and said that Sarah refused to consent to a search because she did not want to "consent to something that may incriminate her husband." 5 VRP at 344.

Jennifer Lopez-Silvers, CPS Investigator with the Children's Administration, testified that when she spoke with Sarah, Sarah stated that she and Neighbarger frequently had pornographic pictures and videos showing in the living room, and they had stopped playing the videos two weeks before the interview because ZN did not like having them on. Lopez-Silvers said that Sarah disclosed that Neighbarger had "choked the kids" and held both children down by their necks. 5 VRP at 326.

## IV. STATE'S MOTION

Before the State rested, it moved to amend the date for count XIII, which was based on the time when ZN walked in on Neighbarger sexually abusing JN in the bedroom. The State wanted to amend count XIII to encompass the expanded range of March 2010 to August 2013 because ZN's testimony indicated that JN would have been 14 or 15 years old at the time and JN testified that the last time that Neighbarger sexually abused him as a minor occurred when he was 14 years old. This meant the abuse would have occurred in 2010, which was not reflected in the charging document. The trial court allowed the amendment to count XIII.

## V. DEFENSE MOTION TO INTRODUCE REPUTATION EVIDENCE

Before calling its first witness Sarah, defense counsel moved for permission to ask Sarah about JN's reputation for truthfulness. Defense counsel stated, "I want to ask her . . . about [JN's]

5

reputation and truthfulness, because she has it in the negative." 6 VRP at 514. The State objected, arguing in part that testimony regarding a witness's reputation in a family community is not admissible under ER 608. The trial court ruled that defense counsel could inquire about JN's reputation for truth and veracity, but such evidence needed to come from "a broader community" and not a family member. 6 VRP at 515.

## VI. DEFENSE TESTIMONY

Neighbarger testified in relevant part that ZN and Neighbarger had planned a trip to Leavenworth together after he returned from a business trip, but they did not go on that trip because Neighbarger was arrested when he got off the plane.

## VII. CLOSING ARGUMENTS

Defense counsel asserted that JN and ZN were not credible and made up the allegations as a way to get Neighbarger out of their house and out of their lives. Defense counsel discussed inconsistencies between JN's and ZN's testimony and JN's prior statements to law enforcement.

In rebuttal, the State discussed ZN's disclosure timing and said in relevant part, "What did we find out from the defendant's testimony? What's planned when he gets back? A boys' getaway. Just him and [ZN] off to Leavenworth for the weekend." 8 VRP at 722-23.

## VIII. VERDICT AND SENTENCING

The jury returned guilty verdicts on all 13 counts and found aggravating factors on several.

Neighbarger stipulated to his offender score. The State recommended an exceptional sentence of 720 months to life in prison based on the 36-point offender score and the "abuse of trust" aggravators found by the jury. 9 VRP at 745. Defense counsel acknowledged that the jury found aggravating factors and the sentencing court had broad sentencing discretion to order above

the standard range. Defense counsel argued that the sentence would be indeterminate, so the judge should not impose an exceptional sentence. But defense counsel did not argue that the convictions should be treated as the same criminal conduct for the purpose of calculating his offender score and sentencing.

The sentencing court imposed an exceptional sentence upward of 480 months to life, based on an offender score of 36.

ANALYSIS

I. EXCLUSION OF EVIDENCE REGARDING VICTIM'S REPUTATION FOR DISHONESTY

Neighbarger argues that the trial court violated his right to present a defense when it excluded Sarah's proposed testimony regarding JN's reputation for dishonesty. We disagree.

A. PRINCIPLES OF LAW

Criminal defendants have the right to present a defense. U.S. CONST. amend. VI; WASH. CONST., art. I, § 22; *State v. Wittenbarger*, 124 Wn.2d 467, 474, 880 P.2d 517 (1994). But "the scope of that right does not extend to the introduction of otherwise inadmissible evidence." *State v. Aguirre*, 168 Wn.2d 350, 363, 229 P.3d 669 (2010). Accordingly, where evidence is inadmissible, excluding that evidence does not violate a defendant's constitutional right to present a defense. *Aguirre*, 168 Wn.2d at 363.

We review for an abuse of discretion whether a party established the proper foundation to admit reputation testimony under ER 608. *State v. Gregory*, 158 Wn.2d 759, 804-05, 147 P.3d 1201 (2006), *overruled on other grounds by State v. W.R., Jr.*, 181 Wn.2d 757, 336 P.3d 1134 (2014). A trial court abuses its discretion when it acts in a manner that is manifestly unreasonable

or based on untenable grounds or reasons. *State v. Land*, 121 Wn.2d 494, 500, 851 P.2d 678 (1993).

ER 608 provides that a party may attack or support a witness's credibility through evidence of the witness's reputation for untruthfulness in the community. "'To establish a valid community, the party seeking to admit the reputation evidence must show that the community is both neutral and general.'" *Gregory*, 158 Wn.2d at 804 (quoting *Land*, 121 Wn.2d at 500). In determining whether the proffered "community is both neutral and general," the trial court considers factors such as "the frequency of contact between members of the community, the amount of time a person is known in the community, the role a person plays in the community, and the number of people in the community." *Land*, 121 Wn.2d at 500.

## B. REPUTATION EVIDENCE PROPERLY EXCLUDED

Neighbarger attempts to frame his argument as a Sixth Amendment claim, saying that because Sarah's testimony regarding JN's reputation was excluded, he was denied his right to present a defense. But Neighbarger's right to present a defense was not violated if the evidence was properly excluded under ER 608. *Aguirre*, 168 Wn.2d at 363.

Neighbarger's proffered evidence was inadmissible because he failed to lay a proper foundation for reputation evidence under *Gregory*. In *Gregory*, our Supreme Court held that the victim's family was neither neutral nor sufficiently generalized to constitute a community under ER 608. 158 Wn.2d at 805. The court stated,

> [T]he inherent nature of familial relationships often precludes family members from providing an unbiased and reliable evaluation of one another. In addition, the "community" with which Larson had discussed R.S.'s reputation included only two people, Larson and R.S's sister. Any community comprised of two individuals is too small to constitute a community for purposes of ER 608.

*Gregory*, 158 Wn.2d at 805 (citing *State v. Lord*, 117 Wn.2d 829, 874, 822 P.2d 177 (1991), *abrogated on other grounds by State v. Schierman*, ___ Wn.2d ___, 415 P.3d 106 (2018)).

Here, as in *Gregory*, Neighbarger's proffered reputation testimony concerned only JN's reputation with his mother, Sarah. 158 Wn.2d at 805. Defense counsel stated, "I want to ask her . . . about [JN's] reputation and truthfulness, because she has it in the negative." 6 VRP at 514. Sarah's opinion of JN's truthfulness, as testimony of a single family member, does not meet the general community nor the neutrality requirements to provide a foundation for ER 608 evidence. *See Gregory*, 158 Wn.2d at 805.

## C. *CAYETANO-JAIMES*

Neighbarger relies on *State v. Cayetano-Jaimes*[3] to support that the trial court erred by "excluding an entire class of testimony," and thus denying his right to present a defense. Br. of Appellant at 10. In *Cayetano-Jaimes*, Division One of this court held that the defendant's right to present a defense was violated when the trial court categorically excluded telephonic testimony. 190 Wn. App. at 291-92, 298-300.

But unlike the defendant in *Cayetano-Jaimes*, Neighbarger does not allege that he was prevented from presenting a witness's entire testimony, nor that the court imposed a categorical bar on any mode of presenting evidence. Although Neighbarger is correct that *Cayetano-Jaimes* states that "per se rules excluding an entire class of testimony may violate a defendant's constitutional right to present a complete defense," he has not explained how the trial court

---

[3] 190 Wn. App. 286, 298, 359 P.3d 919 (2015).

imposed a "per se rule[] excluding an entire class of testimony" in this case. *Cayetano-Jaimes*, 190 Wn. App. at 298.

Here, the trial court specifically stated that proper reputation testimony would be admissible, but concluded that Neighbarger failed to lay a foundation for why Sarah's testimony was proper under ER 608. Because Neighbarger failed to meet the foundation requirements under ER 608, the trial court did not abuse its discretion when it excluded Sarah's proposed testimony. *See Gregory*, 158 Wn.2d at 804; *Land*, 121 Wn.2d at 500.[4]

## II.  ER 404(b) EVIDENCE

The parties dispute whether the trial court erred when it admitted testimony that Neighbarger initiated sex with JN when JN was an adult to show lustful disposition toward JN. We agree with the State that the lustful disposition evidence was properly admitted under ER 404(b).

### A.  PRINCIPLES OF LAW

We review the trial court's ruling to admit or exclude evidence of misconduct for an abuse of discretion. *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). A trial court abuses its discretion when it fails to abide by the rule's requirements. *Fisher*, 165 Wn.2d at 745.

"Generally, evidence of a defendant's prior misconduct is inadmissible to demonstrate the accused person's propensity to commit the crime charged." *Fisher*, 165 Wn.2d at 744; ER 404(b).

---

[4] In his reply brief, Neighbarger raises a new argument that the State "opened the door" to Sarah's testimony. Reply Br. of Appellant at 1. Because he raises this issue for the first time in his reply, we do not consider it. *See State v. Chen*, 178 Wn.2d 350, 358 n.11, 309 P.3d 410 (2013) (citing *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992)). Moreover, Neighbarger's argument relies on the assertion that JN testified that he was a "'paragon of virtue,'" and JN never testified to that. Reply Br. of Appellant at 2. As such, Neighbarger's argument fails.

However, ER 404(b) allows the introduction of prior misconduct evidence to demonstrate the defendant's lustful disposition toward the victim. *State v. Camarillo*, 115 Wn.2d 60, 70, 794 P.2d 850 (1990); *State v. Ray*, 116 Wn.2d 531, 547, 806 P.2d 1220 (1991).

Lustful disposition evidence is admissible under ER 404(b) to show the lustful inclination of the defendant toward the victim, which makes it more probable that the defendant committed the offense charged. *Ray*, 116 Wn.2d at 547.

We read ER 404(b) in conjunction with ER 403. *Fisher*, 165 Wn.2d at 745. ER 403 requires the trial court to exercise its discretion in excluding relevant evidence that would be unfairly prejudicial. Before admitting misconduct evidence, the court must (1) find by a preponderance of the evidence that the misconduct actually occurred, (2) identify the purpose of admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value against the prejudicial effect of the evidence. *Fisher*, 165 Wn.2d at 745.

### B. ADMISSION PROPER

Neighbarger argues that the trial court improperly admitted evidence of Neighbarger's lustful disposition towards JN years after the last instance of abuse occurred because "'propensity'" evidence is "strictly prohibited." Br. of Appellant at 12. Neighbarger argues that "in a situation where the evidence is to show his disposition to commit child rape of the victim when the evidence is that the encounter involved consenting adults, the evidence is not relevant." Br. of Appellant at 13.

Contrary to Neighbarger's claims, properly admitted lustful disposition evidence is an exception to the general rule that evidence regarding a person's propensity to commit a crime is

inadmissible. *Fisher*, 165 Wn.2d at 744; *Ray*, 116 Wn.2d at 547. And as the State asserts, it is a long-standing principle that evidence of sexual acts between the defendant and victim that occurred before and after the charged acts are admissible to explain lustful disposition. *See, e.g.*, *State v. Russell*, 171 Wn.2d 118, 121-24, 249 P.3d 604 (2011); *State v. Crowder,* 119 Wash. 450, 451-52, 205 P. 850 (1922) (cited by Br. of Resp't at 17-18). Here, the lustful disposition evidence is not simply evidence of lawful sexual advances by one adult against another—the evidence involves a sexual advance by a father towards his adult child. Even consensual sex between a father and an adult child is incest and a crime under RCW 9A.64.020. Thus, contrary to Neighbarger's assertions, the lustful disposition evidence does not use evidence of a legal sexual activity between two adults to prove lustful disposition toward the victim as a child. Here, the lustful disposition evidence instead involves evidence of an illegal incestuous act, which is highly probative of whether Neighbarger committed other, prior incestuous sexual acts against JN.

Furthermore, the State's reliance on *Russell* provides additional support that the lustful disposition evidence was admissible. In *Russell*, our Supreme Court concluded, in part, that the trial court did not err when it admitted evidence under ER 404(b) of sexual acts between the defendant and victim that occurred both before and after the charged crimes to prove Russell's lustful disposition toward his victim. 171 Wn.2d at 121-24. Here, like in *Russell*, the trial court properly admitted lustful disposition evidence of sexual acts between the defendant and victim that occurred after the last alleged sexual abuse.

## C. BALANCING TEST

Neighbarger also asserts that reversal is required because the trial court erred when it did not perform the balancing test on the record. But any error is harmless.

12

A trial court's failure to conduct the balancing test on the record before admitting ER 404(b) evidence can still be harmless when the record is adequate for review. *State v. Jackson*, 102 Wn.2d 689, 694, 689 P.2d 76 (1984).

Here, the record is sufficient for us to determine that the probative value outweighs the prejudicial effect. *See State v. Hepton*, 113 Wn. App. 673, 688, 54 P.3d 233 (2002). The trial court identified that the purpose of the evidence was to show "lustful disposition and the norm within the family that allegedly had been created." 1 VRP at 17. As the *Hepton* court held, on review we can weigh the probative value and prejudicial effect. 113 Wn. App. at 688. The lustful disposition evidence is probative of Neighbarger's lustful inclination toward JN, which makes it more probable that he committed the charged offenses, including incest. *See Ray*, 116 Wn.2d at 547. Although evidence that Neighbarger initiated sex with his adult child is prejudicial, it is not more prejudicial than probative in the context of Neighbarger's trial for numerous acts of rape, molestation, and incest. Because the lustful disposition evidence's probative value outweighs its prejudicial effect, the trial court's failure to conduct the balancing test on the record is harmless, and the lustful disposition evidence was properly admitted under ER 404(b). *See Hepton*, 113 Wn. App. at 688; *Ray*, 116 Wn.2d at 547.

### III. AMENDED CHARGES

Neighbarger argues that the trial court erred when it allowed the State during trial to amend the time period covered by count XIII. We disagree.

We review a trial court's decision to amend charges for an abuse of discretion. *State v. Schaffer*, 120 Wn.2d 616, 621-22, 845 P.2d 281 (1993). The trial court may permit amendment

13

of an information "any time before verdict or finding if substantial rights of the defendant are not prejudiced." CrR 2.1(d).

Neighbarger asserts that the State's amendment violated the holding in *State v. Pelkey*, 109 Wn.2d 484, 490-91, 745 P.2d 854 (1987). But Neighbarger's reliance on *Pelkey* is misplaced. *Pelkey* holds that the State may not amend the information *after* it rests its case in chief unless it is to reduce the severity of the charges. 109 Wn.2d at 490-91. In Neighbarger's case, the amendment occurred before the State rested its case. *Pelkey* fails to support that the amendment was improper. Neighbarger has thus failed to establish that the trial court abused its discretion when it allowed the State to amend the time period covered by count XIII. *See* CrR 2.1(d); *Schaffer*, 120 Wn.2d at 621-22.

## IV. SUFFICIENCY OF THE EVIDENCE

Neighbarger argues that sufficient evidence does not support his convictions because the convictions rely upon only "mere speculation." Br. of Appellant at 14. But after a thorough review of the record, we disagree.

### A. PRINCIPLES OF LAW

We review sufficiency of the evidence de novo. *State v. Berg*, 181 Wn.2d 857, 867, 337 P.3d 310 (2014). When reviewing sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the crime's essential elements beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). We assume all of the State's evidence and any reasonable inferences from it are true, and all reasonable inferences from the evidence must be drawn in the State's favor and interpreted most strongly against the defendant. *Homan*, 181 Wn.2d

at 106. We defer to the jury to resolve issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence. *Homan*, 181 Wn.2d at 106.

## B. Credibility Unreviewable

Neighbarger argues that sufficient evidence does not support his convictions because JN's and ZN's testimony "differed in so many respects that any conviction could only be based on speculation." Br. of Appellant at 14. Neighbarger asserts that the dates provided by JN and ZN were not consistent, their descriptions of events were not consistent with each other, and JN was not reliable because his testimony differed from his police interview statements. But as the State asserts, Neighbarger's arguments are attacks on ZN's and JN's credibility, and the jury alone determines issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence. *Homan*, 181 Wn.2d at 106. To the extent Neighbarger's sufficiency argument challenges the witnesses' credibility and the weight of conflicting evidence, his claim fails. *See Homan*, 181 Wn.2d at 106.

## C. Sufficient Evidence Supports Each Conviction

Although Neighbarger's sufficiency arguments relate to only credibility issues, he argues in a heading that there was "insufficient evidence to convict Mr. Neighbarger of the charges," and one of his assignments of error states that sufficient evidence did not support counts I-IV and counts XI-XIII. Br. of Appellant at 14 (capitalization omitted). But after a review of the record we conclude that sufficient evidence supports his convictions.[5]

---

[5] We hold that any additional argument that Neighbarger makes only in a heading is insufficient for us to address. *See State v. Thomas*, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004); RAP 10.3(a)(6).

1.    FIRST DEGREE CHILD RAPE

Neighbarger appears to argue that sufficient evidence does not support his convictions for first degree child rape (counts I-IV, VI-VIII, XI).

To prove first degree child rape under RCW 9A.44.073(1), the State must establish that the perpetrator had "'sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim.'" *State v. Bobenhouse*, 166 Wn.2d 881, 888, 214 P.3d 907 (2009) (quoting RCW 9A.44.073(1)). A person may be liable for the acts of another if he or she is an accomplice to the act. RCW 9A.08.020(1), (2)(c); *State v. Farnsworth*, 185 Wn.2d 768, 780, 374 P.3d 1152 (2016). One is an "accomplice" of another if the person aids or agrees to aid the other in planning or committing the crime, with the knowledge that it will promote or facilitate the commission of such crime. RCW 9A.08.020(3)(a)(ii); *Farnsworth*, 185 Wn.2d at 780.

The only element that Neighbarger appears to challenge is the "sexual intercourse with another who is less than twelve years old" element for each rape charge. RCW 9A.44.073(1).

However, JN's testimony supports counts I-IV. JN's testimony was sufficient to support the sexual intercourse element for first degree rape.[6] ZN's testimony supports counts VI-VIII. This testimony is sufficient to support the sexual intercourse element for counts VI-VIII. JN's and ZN's testimony supports count XI. By directing JN's and ZN's acts, Neighbarger promoted and facilitated sexual intercourse with a person under age 12 and became an accomplice to the crime.

---

[6] The jury was instructed that it "must unanimously agree as to which act has been proved." Clerk's Papers at 226.

RCW 9A.44.073(1); RCW 9A.08.020(3)(a)(ii); *Farnsworth*, 185 Wn.2d at 780. As such, JN's and ZN's testimony supports count XI.

2.    FIRST DEGREE CHILD MOLESTATION

Neighbarger appears to argue that sufficient evidence does not support his convictions for first degree child molestation (counts V, IX, X).

To prove first degree child molestation, the State must prove the offender had "sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). The only disputed element is that Neighbarger had "sexual contact with another who is less than twelve years old." RCW 9A.44.083(1).

A review of the record shows that ZN's testimony supports count V. In addition, ZN's testimony supports counts IX-X.

3.    FIRST DEGREE INCEST

Finally, Neighbarger appears to argue that sufficient evidence does not support his convictions for first degree incest (counts XII and XIII).

To prove first degree incest, the State must establish that the person "engage[d] in sexual intercourse with a person whom he or she knows to be related to him or her, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister of either the whole or the half blood." RCW 9A.64.020(1)(a).

A review of the record shows that ZN's testimony supports count XII and count XIII. Viewed in the light most favorable to the State, a rational trier of fact could have found that the State proved each of the charged crimes' elements beyond a reasonable doubt. *State v. Sweany*,

174 Wn.2d 909, 914, 281 P.3d 305 (2012); *Homan*, 181 Wn.2d at 105-06. As such, sufficient evidence supports Neighbarger's convictions. *Homan*, 181 Wn.2d at 106.

## V. CUMULATIVE ERROR

Neighbarger argues that cumulative error denied him a fair trial. We reject Neighbarger's cumulative error argument.

We review cumulative error claims de novo. *State v. Clark*, 187 Wn.2d 641, 649, 389 P.3d 462 (2017). "[A] defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair." *State v. Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). Neighbarger must show that "while multiple trial errors, 'standing alone, might not be of sufficient gravity to constitute grounds for a new trial, the combined effect of the accumulation of errors most certainly requires a new trial.'" *Clark*, 187 Wn.2d at 649 (quoting *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984)).

A cumulative error claim that relies on a single, nonprejudicial error fails. *See, e.g.*, *Emery*, 174 Wn.2d at 766; *State v. Yarbrough*, 151 Wn. App. 66, 97-98, 210 P.3d 1029 (2009).

The only error Neighbarger has properly identified is the trial court's failure under ER 404(b) to conduct a balancing test before admitting evidence of Neighbarger's lustful disposition towards JN. But the error under ER 404(b) was harmless error. Because Neighbarger established only a single, nonprejudicial error, his cumulative error claim fails. *Emery*, 174 Wn.2d at 766; *Yarbrough*, 151 Wn. App. at 97-98.

## VI. SAME CRIMINAL CONDUCT

Neighbarger argues that the trial court erred when it failed to consider certain convictions as the same criminal conduct for the purpose of calculating his offender score, and his offender score was actually 14 or 16. Neighbarger waived his same criminal conduct argument.

### A. PRINCIPLES OF LAW

A defendant waives a challenge to a miscalculated offender score when the alleged error involves an agreement to facts, later disputed, or when the alleged error involves a matter of trial court discretion. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 874, 50 P.3d 618 (2002). A defendant's offender score challenge involves an agreement to facts and a matter of trial court discretion, and is thus subject to waiver, when a defendant stipulates to his offender score and then, for the first time on appeal, argues that the convictions constitute the same criminal conduct. *Goodwin*, 146 Wn.2d at 875 (citing *State v. Nitsch*, 100 Wn. App. 512, 523, 997 P.2d 1000 (2000)).

### B. WAIVER

In *Nitsch*, the defendant agreed in a presentence report that his offender score was properly calculated. 100 Wn. App. at 517, 521-22. On appeal, he argued for the first time that two of his convictions were the same criminal conduct such that they could not each be counted in the other's offender score. *Nitsch*, 100 Wn. App. at 518. Division One of this court held that the defendant had waived the offender score challenge that was based on the unpreserved same criminal conduct argument. *Nitsch*, 100 Wn. App. at 519, 522-23. The court held that a determination of whether crimes are the same criminal conduct involves both factual determinations and exercise of discretion, and thus failure to raise the matter at sentencing results in waiver. *Nitsch*, 100 Wn. App. at 522-23. The court emphasized the negative consequences that would result from

reviewing the matter without a sufficient record to evaluate the trial court's exercise of discretion. *Nitsch*, 100 Wn. App. at 524-25.

Like the defendant in *Nitsch*, Neighbarger stipulated to his offender score and at sentencing did not challenge the offender score or argue that any of his convictions are the same criminal conduct. *Nitsch*, 100 Wn. App. at 517, 522-23. As such, like the defendant's arguments in *Nitsch*, Neighbarger's arguments challenging his offender score are waived. 100 Wn. App. at 519, 522-23.

Even if we were to reach this argument, it still fails on the merits. Neighbarger concedes that his offender score would still be over nine points if the sentencing court accepts his same criminal conduct arguments. As such, his standard sentencing range would not change, even if his arguments were accepted. *See State v. Argo*, 81 Wn. App. 552, 569, 915 P.2d 1103 (1996); *State v. Kilgore*, 141 Wn. App. 817, 825, 172 P.3d 373 (2007), *aff'd*, 167 Wn.2d 28, 216 P.3d 393 (2009). Neighbarger has not established that reversal of his sentences would be appropriate under these circumstances.

## STATEMENT OF ADDITIONAL GROUNDS

### I. MATTERS OUTSIDE THE RECORD

Neighbarger argues that (1) the trial court violated his Sixth Amendment right to an impartial jury when it "ignored" jurors' statements that "it would be a hardship to be on jury duty during the holidays" (SAG at 2); (2) investigators engaged in unlawful destruction of evidence when they allegedly returned Neighbarger's work laptop to his workplace; (3) the trial court erred when it excluded Neighbarger's lie detector test results; and (4) the "trial court erred when it refused Mr. Neighbarger's attorney the right to interview the accusers." SAG at 1.

20

On direct appeal, the reviewing court will not consider matters outside the trial record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Here, the record does not contain voir dire transcripts documenting the exercise of for cause challenges for jurors with hardships, so there is no record of whether the trial court "ignored" jurors' hardship claims. In addition, the record does not contain information regarding investigators' handling of defendant's work laptop, transcripts from any pretrial hearing at which the court excluded the polygraph results, nor any indication that the trial court denied defense counsel the opportunity to interview JN and ZN. Because Neighbarger's arguments rely on matters outside the record, the arguments fail.

## II. DEFINITION OF PORNOGRAPHY

Neighbarger argues that the trial court erred when it failed to define "pornography," such that the court violated his Sixth Amendment right to an impartial jury and First Amendment speech rights. Specifically, he argues that because the prosecution presented evidence that Neighbarger watched pornography, but the court never defined pornography for the jury, this led "the jury to use their own definition of pornography and allowed them to believe that it was illegal causing obvious prejudicial errors." SAG at 1.

Neighbarger's argument rests on a false assumption. Contrary to Neighbarger's argument, the jury did not apply a definition of pornography nor evaluate the legality of Neighbarger's pornography viewing. The jury was not asked to make any findings that required a definition of "pornography," and no charges required the jury to determine whether Neighbarger viewed or possessed pornography. The jury instructions did not use the term pornography, so defining the term would not have helped the jury. Moreover, Neighbarger's attorney did not request an

21

instruction to define pornography. Neighbarger has failed to show that the trial court erred in failing, sua sponte, to provide a definition of pornography.

### III. HEARSAY

Neighbarger argues that the trial court erred when it allowed hearsay evidence regarding Sarah's statements to Detective Wilcox, Sergeant Pihl, and CPS worker Lopez-Silvers. We reject Neighbarger's argument.

### A. PRINCIPLES OF LAW

"We review the admission of hearsay for an abuse of discretion." *State v. Mason*, 160 Wn.2d 910, 922, 162 P.3d 396 (2007). A party must raise a hearsay objection to preserve the issue for appellate review. *State v. Smith*, 155 Wn.2d 496, 501, 120 P.3d 559 (2005).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). A statement that falls within this definition is inadmissible, subject to various exemptions and exceptions. ER 802; *see* ER 801(d) (exemptions); ER 803-04 (exceptions). "[T]o the extent that a witness' own prior inconsistent statement is offered to cast doubt on his or her credibility, it is not offered to prove the truth of the matter asserted, it is nonhearsay, and it may be admissible 'to impeach.'" *State v. Williams*, 79 Wn. App. 21, 26, 902 P.2d 1258 (1995) (emphasis omitted).

### B. NO ERROR

Neighbarger challenges three different statements as hearsay. Specifically, Neighbarger argues that the trial court erred when it admitted (1) Lopez-Silvers's testimony that Sarah told her that Neighbarger "'had choked the kids'" and engaged in other physical abuse, (2) Wilcox's opinion testimony that Sarah was cold towards ZN after he made the disclosure, and (3) Sergeant

22

Pihl's statement that Sarah refused to consent to a search of Neighbarger's phone. SAG at 4. Neighbarger fails to establish a hearsay violation regarding any of these statements.

First, Lopez-Silvers's testimony regarding Sarah's prior statements to law enforcement was admitted as a prior inconsistent statement to impeach Sarah's testimony that Neighbarger never choked the children or physically abused them. Because the statements were admitted for impeachment purposes, the statements were not hearsay and the trial court did not err in admitting them. *Williams*, 79 Wn. App. at 26.

Second, Wilcox's opinion that Sarah acted coldly towards ZN was not hearsay because it did not involve an out-of-court statement by Sarah that was offered for the truth of the matter asserted. *See* ER 801(c). Wilcox's personal observations of Sarah's demeanor did not involve testimony about statements that Sarah made. As such, the testimony was not hearsay. ER 801(c).

Third, defense counsel did not raise at trial a hearsay objection to Sergeant Pihl's statement that Sarah declined consent to search because she didn't want to do something that would incriminate her husband. Because defense counsel did not assert a hearsay objection below, it is waived on appeal. *Smith,* 155 Wn.2d at 501.

Neighbarger's hearsay arguments fail because he challenges testimony that was not hearsay or for which he has waived a hearsay objection. ER 801(c); *Williams*, 79 Wn. App. at 26; *Smith,* 155 Wn.2d at 501. As such, the trial court did not abuse its discretion when it admitted the challenged statements.

IV. PROSECUTORIAL MISCONDUCT

Neighbarger argues that the State engaged in prosecutorial misconduct by lying during closing argument. We reject this argument.

23

A. PRINCIPLES OF LAW

"'Allegations of prosecutorial misconduct are reviewed under an abuse of discretion standard.'" *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014) (quoting *State v. Brett*, 126 Wn.2d 136, 174-75, 892 P.2d 29 (1995)). "The defendant bears the burden of showing that the comments were improper and prejudicial." *Lindsay*, 180 Wn.2d at 430. If the defendant fails to object to the State's conduct or fails to request a curative instruction at trial, the issue of misconduct is waived unless it was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *Lindsay*, 180 Wn.2d at 430.

We review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). A prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury. *Dhaliwal*, 150 Wn.2d at 577. However, a prosecutor may not make statements that are unsupported by the evidence and prejudice the defendant. *Dhaliwal*, 150 Wn.2d at 577.

B. NO PROSECUTORIAL MISCONDUCT

Neighbarger challenges the following statement from closing argument:

> What did we find out from the defendant's testimony? What's planned when he gets back? A boys' getaway. Just him and [ZN] off to Leavenworth for the weekend. It made every sense in the world to come forward when he did.

9 VRP at 722-23.

Neighbarger argues that the State lied because he never testified it would be just the two of them going to Leavenworth, and actually other individuals were planning to go on the trip as well.

No. 50033-7-II

Contrary to Neighbarger's assertion, the prosecutor's challenged statement was proper argument based on the evidence. *See Dhaliwal*, 150 Wn.2d at 577. Neighbarger testified that "[ZN and I] were supposed to go on a run in Leavenworth when I got back from Texas." 7 VRP at 589. The State drew a reasonable inference from this testimony and asserted an argument based on the evidence when it asserted that ZN disclosed when he did, in part, to avoid traveling with Neighbarger. *Dhaliwal*, 150 Wn.2d at 577. Neighbarger has failed to establish that the State's argument, to which he did not object at trial, was improper, nor has he shown that the statement was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Lindsay*, 180 Wn.2d at 430. As such, his prosecutorial misconduct claim fails.

CONCLUSION

We reject Neighbor's arguments and accordingly we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, C.J.

SUTTON, J.

25